No. 05-559C
(Judge C. Miller)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PURE POWER!, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION TO DISMISS

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRYANT G. SNEE
Assistant Director

OF COUNSEL:

CHRISTOPHER J. BURTON
United States Postal Service
Washington, D.C.

DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C. 20530
Tele: (202) 307-0163
Fax: (202) 514-8624

SEPTEMBER 28, 2005

Attorneys for Defendant

# TABLE OF CONTENTS

Page

DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . 1

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . 1

I. Nature Of The Case . . . . . . . . . . . . . . . . . . 1

II. Issues Presented . . . . . . . . . . . . . . . . . . . 4

III. Statement Of Facts . . . . . . . . . . . . . . . . . . 4

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I. Plaintiff Bears The Burden Of Establishing That This Court Possesses Jurisdiction To Consider This Action . . . . . . . . . . . . . . . . . 6

II. Pure Power's Claim Should Be Dismissed For Failure To Plead And Prove Jurisdiction Because Pure Power Has Not Sufficiently Alleged The Existence Of An Express Or Implied-In-Fact Contract Between Plaintiff And The United States . 9

III. This Court Lacks Jurisdiction To Consider Pure Power's Procurement-Based Claim Because Pure Power Is Not An Interested Party . . . . . . . 19

A. As, At Best, A Prospective Subcontractor, Pure Power Cannot Be An "Interested Party" And Therefore Cannot Establish Standing In This Court Pursuant To ADRA . . . . . . . . . 21

TABLE OF CONTENTS (CONT)

| | Page |
|---|---|
| B. Pure Power Is Not An "Interested Party" Notwithstanding Its Status As, At Best, A Prospective Subcontractor Because Its Protest Does Not Concern A Challenge To An Actual Bid or Solicitation | 23 |
| CONCLUSION | 25 |

## TABLE OF AUTHORITIES

### FEDERAL CASES

Page(s)

Adams v. United States,
20 Cl. Ct. 132 (1990) . . . . . . . . . . . . . . . . . . . 7

Aetna Casualty & Surety Co. v. United States,
228 Ct. Cl. 146, 655 F.2d 1047 (1981) . . . . . . . . . . 10

Alaska Central Express, Inc. v. United States,
50 Fed. Cl. 510 (2001) . . . . . . . . . . . . . . 20-21,23-24

American Fed'n of Gov't Employees v. United States,
258 F.3d 1294 (Fed. Cir. 2001) . . . . . . . . . . . . . . 20

AFGE, Local 1482 v. United States,
258 F.3d 1294 (2001) . . . . . . . . . . . . . . . . . 20,23

Banknote Corp. of America v. United States,
365 F.3d 1345 (Fed. Cir. 2004) . . . . . . . . . . . . . . 20

CCL Serv. Corp. v. United States,
43 Fed. Cl. 680 (1999) . . . . . . . . . . . . . . . . . . 25

Christianson v. Colt Industries Operating Corp.,
486 U.S. 800 (1988) . . . . . . . . . . . . . . . . . . . 10

City of El Centro v. United States,
922 F.2d 816 (Fed. Cir. 1990) . . . . . . . . . . . . 12-13

City of Cincinnati v. United States,
153 F.3d 1375 (Fed. Cir. 1998) . . . . . . . . . . . . . . 12

Cupey Bajo Nursing Home, Inc. v. United States,
23 Cl. Ct. 406 (1991) . . . . . . . . . . . . . . . . . . . 7

Dynalectron Corp. v. United States,
4 Cl. Ct. 424, aff'd, 758 F.2d 665
(Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . 9

Eagle Design & Management, Inc. v. United States,
62 Fed. Cl. 106 (2004) . . . . . . . . . . . . . . . . 21-23

TABLE OF AUTHORITIES Con't

FEDERAL CASES

Page(s)

Eastport S.S. Corp. v. United States,
178 Ct. Cl. 599, 372 F.2d 1002 (1967) . . . . . . . . . . 10

Emery Worldwide Airlines, Inc. v. United States,
264 F.3d 1071 (Fed. Cir. 2001) . . . . . . . . . . . . . . 2,19

Emery Worldwide Airlines, Inc. v. United States,
47 Fed. Cl. 461 (2000) . . . . . . . . . . . . . . . . . . 25

Essen Mall Properties v. United States,
21 Cl. Ct. 430, 445 (1990) . . . . . . . . . . . . . . . . 13

Farmers Grain Co. of Esmond v. United States,
29 Fed. Cl. 684 (1993) . . . . . . . . . . . . . . . . . . 7

Fidelity Construction Co. v. United States,
700 F.2d 1379 (Fed. Cir.),
cert. denied, 464 U.S. 826 (1983) . . . . . . . . . . . . 10

Fire-Trol Holdings, LLC v. United States,
62 Fed Cl. 440 (2004) . . . . . . . . . . . . . . . . . . 24

Flamingo Industries v. United States Postal Serv.,
392 F.3d 985 (9th Cir. 2002),
rev'd on other grounds, 540 U.S. 736 (2004) . . . . . . . 2

Federal Crop Ins. Corp. v. Merrill,
332 U.S. 380 (1947) . . . . . . . . . . . . . . . . . . . 13

Flexfab, L.L.C. v. United States,
Fed. Cir. No. 05-5018, Slip Op.
(Sept. 27, 2005) . . . . . . . . . . . . . . . . . . . . . 13

Franklin Sav. Corp. v. United States,
56 Fed. Cl. 720 (2003) . . . . . . . . . . . . . . . . . . 18

FW/PBS, Inc. v. Dallas,
493 U.S. 215 (1990) . . . . . . . . . . . . . . . . . . . 9

TABLE OF AUTHORITIES Con't

FEDERAL CASES

Page(s)

Grundy v. United States,
2 Cl. Ct. 596 (1983) . . . . . . . . . . . . . . . . . . . . . 12

Gibbs v. Buck,
307 U.S. 66 (1939) . . . . . . . . . . . . . . . . . . . . . . 7

Heckler v. Community Health Serv. of Crawford County,
467 U.S. 51 (1984) . . . . . . . . . . . . . . . . . . . . . 12

Indium Corp. of America v. Semi-Alloys, Inc.,
781 F.2d 879 (Fed. Cir. 1985),
cert. denied, 479 U.S. 820 (1986) . . . . . . . . . . . . . 7

Lewis v. United States,
70 F.3d 597 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . 17

Lions Raisins, Inc. v. United States,
52 Fed. Cl. 115 (2002) . . . . . . . . . . . . . . . . . . . 16

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . 9

Khairallah v. United States,
43 Fed. Cl. 57 (1999) . . . . . . . . . . . . . . . . . . . 18

Toranzo-Claure v. United States,
48 Fed. Cl. 581 (2001) . . . . . . . . . . . . . . . . . . . 18

MCI Telecommunications Corp. v. United States,
878 F.2d 362 (Fed. Cir. 1989) . . . . . . . . . . . . . . . 22

McAfee v. United States,
46 Fed. Cl. 428 (2000) . . . . . . . . . . . . . . . . . . . 11

McNutt v. General Motors Acceptance Corp.,
298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . 6

TABLE OF AUTHORITIES Con't

FEDERAL CASES

Page(s)

Merritt v. United States,
267 U.S. 338 (1925) . . . . . . . . . . . . . . . . . . . 11

Monarch Assurance P.L.C. v. United States,
244 F.3d 1356 (Fed. Cir. 2001) . . . . . . . . . . . . . . 13

Motorola, Inc. v. United States,
988 F.2d 113 (Fed. Cir. 1993) . . . . . . . . . . . . . . 16

Myers Investigative and Security Serv., Inc.
v. United States,
275 F.3d 1366 (Fed. Cir. 2002) . . . . . . . . . . . . . 9,19

Phoenix Air Group, Inc. v. United States,
46 Fed. Cl. 90 (2000) . . . . . . . . . . . . . . . . . . 22

Omega World Travel v. United States,
9 Cl. Ct. 623 (1986) . . . . . . . . . . . . . . . . . . . 24

Phaidin v. United States,
28 Fed. Cl. 231 233 (1993) . . . . . . . . . . . . . . . . 9

Pure Power! Inc. v. United States Postal Serv.,
83 Fed. Appx. 901 (9th Cir. Dec 11, 2003)
(unpublished) . . . . . . . . . . . . . . . . . . . . . . 2

Reynolds v. Army and Air Force Exchange Serv.,
846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . . . . 6-7

Roy v. United States,
38 Fed. Cl. 184, appeal dismissed,
124 F.3d 224 (Fed. Cir. 1997) . . . . . . . . . . . . . . 12

Sartori v. United States,
58 Fed. Cl. 358 (2003) . . . . . . . . . . . . . . . . . . 14

Saladino v. United States,
62 Fed. Cl. 782 (2004) . . . . . . . . . . . . . . . . . . 6

TABLE OF AUTHORITIES Con't

FEDERAL CASES

Page(s)

Son Broadcasting, Inc. v. United States,
42 Fed. Cl. 532 (1998) . . . . . . . . . . . . . . . . . . 8

Stockton East Water Dist. v. United States,
62 Fed. Cl. 379 (2004) . . . . . . . . . . . . . . . . . . 8

Thomson v. Gaskill,
315 U.S. 442 (1942) . . . . . . . . . . . . . . . . . . 7

Total Med. Mgmt., Inc. v. United States,
104 F.3d 1314 (Fed. Cir. 1997) . . . . . . . . . . . . 12

Trauma Serv. Group v. United States,
104 F.3d 1321 (Fed. Cir. 1997) . . . . . . . . . . . . . 11

United States v. Connolly,
716 F.2d 882 (Fed. Cir. 1983)(en banc),
cert. denied, 465 U.S. 1065 (1984) . . . . . . . . . . . 11

United States v. Johnson Controls, Inc.,
713 F.2d 1541 (Fed Cir. 1983) . . . . . . . . . . . 11,17

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . 10

United States v. Mitchell,
445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . 9,11

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . 9

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . 9-11

UNR Industries, Inc. v. United States,
962 F.2d 1013 (Fed. Cir. 1992) (en banc),
aff'd sub nom., Keene Corp. v. United States,
508 U.S. 200 (1993) . . . . . . . . . . . . . . . . . . 10

TABLE OF AUTHORITIES Con't

FEDERAL STATUTES

Page(s)

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . 20

28 U.S.C. § 1339 . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . 8-10

28 U.S.C. § 1491(a)(1) . . . . . . . . . . . . . . . . . . . 4-5

28 U.S.C. § 1491(b)(1) . . . . . . . . . . . . . . . . 2,4,6,19,24

28 U.S.C. § 1631 . . . . . . . . . . . . . . . . . . . . . 1,8

39 U.S.C. § 401 . . . . . . . . . . . . . . . . . . . . . . 8

39 U.S.C. § 409(a) . . . . . . . . . . . . . . . . . . . . . 8

Administrative Disputes Resolution Act of 1996
Pub. L. No. 104-320, §§ 12(a) . . . . . . . . . . . . . . 16,19

MISC.

RCFC 10(a) . . . . . . . . . . . . . . . . . . . . . . . . 15

RCFC 12(b)(1) . . . . . . . . . . . . . . . . . . . . 1,7,11,18

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PURE POWER! INC., )
)
Plaintiff, )
v. ) No. 05-559C
) (Judge C. Miller)
THE UNITED STATES, )
)
Defendant. )

DEFENDANT'S MOTION TO DISMISS

Defendant, the United States, pursuant to RCFC 12(b)(1), respectfully requests that the Court dismiss plaintiff's complaint for lack of jurisdiction. In support of this motion, we rely upon the complaint and the following brief.[1]

DEFENDANT'S BRIEF

STATEMENT OF THE CASE

I. Nature Of The Case

The United States District Court for the Central District of California transferred this action, pursuant to 28 U.S.C. § 1631, to the Court of Federal Claims by order dated November 23, 2004. Pacer Docket (C.D. Ca.) No. 00-CV-00709 GLT EE (Entry No. 1).[2]

Plaintiff Pure Power! Inc. ("Pure Power"), filed its original complaint in the district court on July 21, 2000.

---

1 Defendant gratefully acknowledges the assistance in the preparation of this motion provided by Jessica C. Morris, a law clerk in the Commercial Litigation Branch, Civil Division, Department of Justice.

2 Docket entries from the district court case are available through Pacer at https://ecf.cacd.uscourts.gov/.

Pacer Docket (C.D. Ca.) No. 00-CV-00709 GLT EE (Entry No. 1). In response to Pure Power's complaint filed in the district court, the Government filed a motion to dismiss, which the district court granted in an order dated March 12, 2001, finding that the court lacked jurisdiction to review a United States Postal Service ("USPS") procurement decision. Pacer Docket (C.D. Ca.) No. 00-CV-00709 GLT EE (Entry No. 24). Pure Power timely appeal from the court's order granting the Government's motion to dismiss. While that appeal was pending, the United States Court of Appeals for the Ninth Circuit issued a decision in Flamingo Industries v. United States Postal Serv., 392 F.3d 985, 994 (9th Cir. 2002), rev'd on other grounds, 540 U.S. 736 (2004), applying a then-recent decision of the United States Court of Appeals for the Federal Circuit, Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1080-83 (Fed. Cir. 2001), holding the Tucker Act, 28 U.S.C. § 1491(b)(1), applicable to USPS.

In the wake of Flamingo, the Ninth Circuit issued a memorandum decision reversing the district court's order dismissing the complaint and remanded the matter to the district court on the issue of subject matter jurisdiction. Pure Power! Inc. v. United States Postal Serv., 83 Fed. Appx. 901 (9th Cir. Dec 11, 2003)(unpublished). Following remand, Pure Power reformulated its complaint to include a breach of contract

claim. Pacer Docket (C.D. Ca.) No. 00-CV-00709 GLT EE (Entry Nos. 64-66)(second and third amended complaints). The Government filed a motion to dismiss and the parties subsequently stipulated to transfer of the case to this Court. See Order of November 23, 2004 and accompanying stipulation.

Pure Power filed its third amended complaint in this Court, containing two causes of action arising out of the alleged failure of USPS to designate Pure Power as an oil filter supplier for a contract between the USPS and Mack Trucks, Inc. ("Mack Trucks"). Comp. ¶¶ 8-22.[3] Pure Power's first cause of action, "Violation of U.S.P.S. Policy and Procedure," alleges USPS violated certain socio-economic policies set forth in the USPS Procurement Manual. Comp. ¶¶ 33-41 and Exhibit "A." Pure Power's second cause of action, "Breach of Contract," stems from an alleged "agreement" between unnamed USPS personnel and Pure Power in early 1996. Comp. ¶ 42. Pure Power alleges that, based upon this alleged "agreement," it formed the belief that, if its filter was successful in a field test, it "would be designated as the sole source for retrofits of oil filters on Mack trucks purchased and to be purchased by" USPS. Comp. ¶ 43.

[3] "Comp. ¶ ___" refers to plaintiff's third amended complaint. "Comp. Ex. ___" refers to exhibits attached to plaintiff's third amended complaint.

II. Issues Presented

1. Whether this Court lacks subject matter jurisdiction to consider Pure Power's contract claim pursuant to 28 U.S.C. § 1491(a)(1), where Pure Power's complaint does not contain well-pleaded allegations of the existence of an express or implied-in-fact contract between Pure Power and the United States.

2. Whether Pure Power, as an alleged prospective subcontractor, is an "interested party" and thus can establish standing in this Court to bring a procurement-based protest pursuant to 28 U.S.C. § 1491(b)(1).

3. Whether Pure Power can establish standing as an "interested party" pursuant to section 1491(b)(1) where plaintiff's allegations do not challenge or concern an actual solicitation.

III. Statement Of Facts

Pure Power is a California corporation which manufactures re-usable oil filters, lubricants, and related products. Comp. ¶¶ 1, 16. Pure Power alleges that it was contacted in 1996 by USPS and asked "to take part in a costly two year testing program" wherein its oil filter would be tested against a oil filter manufactured by Glacier Metal Company Limited ("Glacier"). Comp. ¶ 17. According to the complaint, the company with the prevailing filter would be "designated as the

oil filter provider for the retrofit of Mack Trucks being purchased by Postal Service as well as to retrofit previously purchased Mack trucks." Comp. ¶ 18.

According to the complaint, upon completion of the testing, Mack Trucks allegedly notified Pure Power that its oil filter had out-performed Glacier's filter. Comp. ¶ 20. Pure Power alleges that, despite these alleged test results, the competitor's product was indicated "as the specified replacement oil filters on the Mack Truck, Inc.'s contract." Comp. ¶ 26. By letter dated January 26, 1999, addressed to the USPS Vice President of Purchasing and Materials, Pure Power protested Mack Truck's use of the competitor's product. Comp. Ex. C; Comp. ¶ 26. By letters dated April 29, 1999, and June 23, 1999, USPS responded to Pure Power's concerns, noting positive previous experience with the competitor's product. Comp. Ex. D and E.

## <u>SUMMARY OF THE ARGUMENT</u>

Pure Power's breach of contract claim does not satisfy the jurisdictional prerequisites of 28 U.S.C. § 1491(a)(1) because Pure Power's complaint provides only conclusory statements regarding the existence of an agreement with the United States and fails to supply sufficient facts to support the basic elements of an express or implied-in-fact contract. Pure Power likewise fails to identify the Government employee with whom Pure Power allegedly dealt or establish that the individual had

authority to bind the United States in contract. Because Pure Power is unable to establish privity with the United States, this Court lacks jurisdiction to consider Pure Power's claim.

With regard to Pure Power's allegation of a violation of the USPS Procurement Manual, there is no jurisdictional basis for such a claim because Pure Power is not an "interested party" pursuant to the terms of 28 U.S.C.§ 1491(b)(1). Pure Power's status as, at best, a prospective subcontractor to Mack Trucks on a contract already being performed by Mack Trucks, precludes a finding that Pure Power was an "interested party." Assuming for the sake of argument that Pure Power's status could be construed as something other than a prospective subcontractor, the fact that Pure Power's protest does not implicate a Government solicitation or competitive procurement decision places it beyond the jurisdictional confines of 28 U.S.C. § 1491(b)(1).

## ARGUMENT

### I. Plaintiff Bears The Burden Of Establishing That This Court Possesses Jurisdiction To Consider This Action

Plaintiff bears the burden of establishing by preponderant evidence that the Court possesses jurisdiction to consider this suit. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189-90 (1936); Reynolds v. Army and Air Force Exchange Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Saladino v. United States, 62 Fed. Cl. 782, 786 (2004). Where "a plaintiff's allegations

of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof." Thomson v. Gaskill, 315 U.S. 442, 446 (1942); accord Farmers Grain Co. of Esmond v. United States, 29 Fed. Cl. 684, 686 (1993) (where motion "challenges the truth of the jurisdictional facts alleged in the complaint . . . the court may consider relevant evidence in order to resolve the factual dispute").[4]

In deciding a motion to dismiss for lack of subject matter jurisdiction pursuant to rule 12(b)(1), the Court may consider evidentiary matters outside the pleadings. Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985), cert. denied, 479 U.S. 820 (1986); Adams v. United States, 20 Cl. Ct. 132, 133 n.1 (1990). If the factual basis for jurisdiction is challenged, the allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true for purposes of the motion. Gibbs v. Buck, 307 U.S. 66, 72 (1939).

The complaint here fails to offer a proper basis upon which this Court can assert its jurisdiction to consider plaintiff's

---

[4] This motion is directed toward the Court's jurisdiction and properly is styled a motion to dismiss, rather than a motion for summary judgment. Reynolds, 846 F.2d at 747; Cupey Bajo Nursing Home, Inc. v. United States, 23 Cl. Ct. 406, 411-12 (1991) (motion for summary judgment based upon lack of jurisdiction treated as motion to dismiss).

claims. Indeed, Pure Power fails to allege jurisdiction based upon the Tucker Act, 28 U.S.C. § 1491, this Court's jurisdictional statute. 28 U.S.C. § 1491. Instead, Pure Power alleges jurisdiction based upon 28 U.S.C. § 1339 and 39 U.S.C. §§ 401, 409(a). None of these statutes provide a proper jurisdictional basis for this Court to consider Pure Power's complaint. See 28 U.S.C. § 1339 ("district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to the postal service"); 39 U.S.C. § 401 (discussing general powers of USPS), 39 U.S.C. § 409(a) ("district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service").

To the extent Pure Power attempts to rely upon the district court's transfer of this action to the Court of Federal Claims, we note that "[s]ection 1631 is not a jurisdictional grant and the district court's determination that the action 'could have been brought' before the transferee does not relieve or otherwise exempt a plaintiff from meeting its burden to establish jurisdiction before the transferee court." Stockton East Water Dist. v. United States, 62 Fed. Cl. 379, 389 (2004).[5]

[5] Nor is it relevant that the Government stipulated to the transfer. "Jurisdiction is conferred by Congress, not by defendant's arguments in the district court proceeding and not by the district court's transfer of the case to the Court of Federal Claims." Son Broadcasting, Inc. v. United States, 42 Fed. Cl.

This burden requires the party invoking Federal jurisdiction to establish the elements of standing. Myers Investigative and Security Serv., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990)).

As we discuss below, Pure Power cannot establish jurisdiction in this Court pursuant to the Tucker Act. Accordingly, the Court should dismiss the complaint for lack of subject matter jurisdiction.

## II. Pure Power's Claim Should Be Dismissed For Failure To Plead And Prove Jurisdiction Because Pure Power Has Not Sufficiently Alleged The Existence Of An Express Or Implied-In-Fact Contract Between Plaintiff And The United States

Like its predecessors, the United States Court of Federal Claims is a court of limited jurisdiction. Phaidin v. United States, 28 Fed. Cl. 231, 233 (1993); Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984) (table). Absent congressional consent to suit, the Court lacks authority to grant relief. E.g., United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941).

Congressional consent to suit in this Court, which thereby waives sovereign immunity, must be explicit and strictly construed. United States v. Mitchell, 445 U.S. 535, 538 (1980);

---

532, 536 (1998).

Fidelity Construction Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983). A waiver of sovereign immunity cannot be implied, but must be unequivocally expressed. Testan, 424 U.S. at 399; United States v. King, 395 U.S. 1, 4 (1969). Moreover, "a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists." Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 818 (1988); accord UNR Industries, Inc. v. United States, 962 F.2d 1013, 1022-23, 1025 (Fed. Cir. 1992) (en banc), aff'd sub nom., Keene Corp. v. United States, 508 U.S. 200 (1993).

The central provision granting consent to suit in this Court is the Tucker Act, 28 U.S.C. § 1491. Testan, 424 U.S. at 397; Aetna Casualty & Surety Co. v. United States, 228 Ct. Cl. 146, 151, 655 F.2d 1047, 1051 (1981). Pursuant to this statute, an action may be maintained in this Court only if it is "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491 (1982).

This provision, however, does not create any substantive right of recovery against the United States for money damages. Testan, 424 U.S. at 398; Eastport S.S. Corp. v. United States,

178 Ct. Cl. 599, 605-07, 372 F.2d 1002, 1007-09 (1967). Rather, it merely confers jurisdiction upon the Court whenever the substantive right exists. Testan, 424 U.S. at 398; United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc), cert. denied, 465 U.S. 1065 (1984).

Thus, to invoke jurisdiction pursuant to the Tucker Act a plaintiff must establish the existence of a contractual relationship with the United States as a jurisdictional prerequisite. United States v. Johnson Controls, Inc., 713 F.2d 1541, 1550-51 (Fed Cir. 1983) (tracing the privity requirement to Merritt v. United States, 267 U.S. 338 (1925)).[6] A motion to dismiss pursuant to RCFC 12(b)(1) directed at the Court's subject matter jurisdiction is appropriate where plaintiff has alleged an express or implied-in-fact contract and where the complaint does not contain "well pleaded allegations of express or implied-in-fact contract." McAfee v. United States, 46 Fed. Cl. 428, 432 (2000) (citing Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997)).

The requirements to establish a binding contract with the United States, which are identical for both express and implied

---

[6] If no proper contract claim exists, to state a claim within the jurisdiction of this Court a claimant must establish some substantive provision of law, regulation, or the Constitution, which fairly can be construed as mandating compensation. Mitchell, 445 U.S. at 538; Connolly, 716 F.2d at 885. Pure Power alleges no such money mandating provision here.

contracts, are "a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract." Total Med. Mgmt., Inc. v. United States, 104 F.3d 1314, 1319 (Fed. Cir. 1997) (citing City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990)); City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998).

The party asserting the existence of a contract with the United States bears the burden of establishing that the person upon whose alleged promises or representations the party relied had the requisite actual contracting authority. Heckler v. Community Health Serv. of Crawford County, 467 U.S. 51, 63 (1984); see Grundy v. United States, 2 Cl. Ct. 596, 599 (1983) ("claimant for money damages for breach of contract must plead and prove that the Government officer, who supposedly entered into the contract with the claimant, had the actual authority to appropriate Government funds for such purpose").

The requirement of actual authority is critical because the Government, unlike private parties, cannot be bound by the apparent authority of its agents. Roy v. United States, 38 Fed. Cl. 184, 187, appeal dismissed, 124 F.3d 224 (Fed. Cir. 1997). The rationale for this rule is obvious:

> The United States Government employs close to three million civilian employees. If all

> Government employees could, of their own volition, enter into contracts obligating the Government, then federal expenditures would be wholly uncontrollable.

Monarch Assurance P.L.C. v. United States, 244 F.3d 1356, 1360 (Fed. Cir. 2001) (footnote omitted).

While acknowledging the hardship that this requirement may pose, the Supreme Court definitively allocated the risk of misunderstanding to the private party: "[a]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947).

Contracts entered into by Government personnel who lack authority to bind the Government are unenforceable. City of El Centro, 922 F.2d at 820-21; see Flexfab, L.L.C. v. United States, Fed. Cir. No. 05-5018, Slip Op. at 16 (Sept. 27, 2005) ("Surely the assurances from a government agent, having no authority to give them, cannot expose the government to risk of suit for the nonperformance of an obligation that it did not intentionally accept") (Slip Op. available at: http://fedcir.gov/dailylog. html). When a Federal employee exceeds his or her authority, the Government can "disavow the [agent's] words and is not bound by an implied contract." Essen Mall Properties v. United States, 21 Cl. Ct. 430, 445 (1990).

Pure Power's complaint fails to allege the basic elements of a contract and instead contains only conclusory allegations of what USPS allegedly "represented" to Pure Power. Comp. ¶¶ 17-18, 26, 43-45. According to Pure Power:

> On or about January of 1996, U.S.P.S. represented to plaintiff that, if PURE POWER took part in an oil filter testing program, PURE POWER would be designated as the sole source for retrofits of oil filters on Mack trucks purchased and to be purchased by U.S.P.S., provided PURE POWER prevailed over competing filters in the testing program.

Comp. ¶ 43.

These conclusory allegations are wholly insufficient to establish the existence of a contract between Pure Power and the Government. Pure Power's complaint does allege the existence of an express, written agreement, nor are we are aware of any such written document. Yet, Pure Power alleges to have "fully performed all covenants and conditions set forth in the agreement." Comp. ¶ 44.

Pure Power's complaint also fails to identify the official with whom Pure Power entered into the alleged "agreement" concerning the oil filter testing or allege that the individual had the requisite authority. A party's failure to allege the name of a Government official with arguable authority to bind the Government is grounds for dismissal "because it would be impossible for plaintiffs to prove that actual authority existed for an agent whom they cannot identify." <u>Sartori v. United</u>

States, 58 Fed. Cl. 358, 362 (2003) (plaintiff's failure to name EPA official with whom they dealt compounded by failure to allege that such person had the requisite authority was fatal to claim).

Pure Power's complaint names as a defendant William J. Henderson, former Postmaster General and USPS Chief Executive Officer. According to plaintiff, Mr. Henderson has "authority to make purchasing decisions for the U.S.P.S. and is sued individually and as a representative of the U.S.P.S." Comp. ¶ 6.[7] However, Pure Power does not allege that Postmaster General Henderson was the individual who made the alleged agreement with Pure Power.

Pure Power's complaint also names as defendant "Does 1 through 10," whom it claims "are responsible in some manner for the occurrences herein alleged." Comp. ¶ 7. Pure Power's reference to unnamed individuals is insufficient to meet its burden of alleging the name of the individual with whom it interacted or that such individual had authority to bind the Government. Certainly by now, Pure Power knows the identity of the USPS employee with whom it dealt and whether that individual had the requisite authority to bind the Government. Pure

---

[7] Defendant in this case is the United States, not Postmaster General Henderson. RCFC 10(a).

Power's silence upon this issue warrants dismissal of its complaint.

Regarding offer and acceptance, Pure Power's proffered scenario is analogous to Motorola, Inc. v. United States, 988 F.2d 113, 114-15 (Fed. Cir. 1993).[8] In that case, Motorola claimed that "during the development phase of the procurement specifications, it expended considerable time, money and effort in responding to the Government's numerous calls for information." 988 F.2d at 115. Motorola alleged the existence of an implied contract of fair dealing, which it argued was breached when the Government issued a solicitation that effectively denied it a fair opportunity to compete by conditioning eligibility for participation upon the submission of a product sample. Id.

The court of appeals rejected Motorola's argument, holding that the Government's request for information from prospective bidders was not the equivalent of offer and acceptance. 988 F.2d at 116. The court noted that "[s]uch exchanges are not carried on with an expectation to presently affect legal

---

[8] Motorola was brought pursuant to the Court's bid protest jurisdiction based upon an implied contract theory, prior to amendment of the Tucker Act by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, §§ 12(a), 28 U.S.C. § 1491(b)(1); Lions Raisins, Inc. v. United States, 52 Fed. Cl. 115, 120 (2002). Still, the Court's discussion of offer and acceptance remains applicable to the extent Pure Power's claim here is interpreted as being based upon an implied-in-fact contract.

relations. Rather, the parties are dealing . . . exclusively with an eye to the future, each being free, in the meantime, to withdraw from the dialogue." Id. To the extent that Pure Power expended resources participating in the "testing program" at the request of unnamed USPS personnel, it was done "with an eye to the future." Pure Power has failed to demonstrate offer or acceptance.[9]

To the extent the that "agreement" concerns the alleged designation of Pure Power's competitor's product "as the specified replacement oil filters on the Mack Trucks, Inc. contract," Pure Power would be, at best, a supplier to Mack Trucks. Comp. ¶ 26. As a supplier or subcontractor to Mack Trucks, Pure Power lacks contractual privity with the United States and as such cannot establish standing under the Tucker Act. See Johnson Controls, 713 F.2d at 1550 ("the no-privity rule is synonymous with a finding that there is no express or implied contract between the government and a subcontractor").

To the extent Pure Power claims that it was entitled to be the sole supplier of oil filters to Mack Trucks for an unlimited amount of time, such an alleged open-ended promise would be contrary to the well-established principle that an implied-in-fact contract requires a lack of ambiguity in offer and acceptance. See Lewis v. United States, 70 F.3d 597, 600 (Fed.

---

[9] Pure Power likewise has failed to demonstrate consideration.

Cir. 1995).[10] "[A]n offer must specify a promise to perform the terms of an express contract. The terms of the offer must be specific and unambiguous, so that acceptance of that offer will cement a binding bargain enforceable by law." Franklin Sav. Corp. v. United States, 56 Fed. Cl. 720, 742 (2003) (citations omitted). The alleged open-ended promise to designate Pure Power as the oil filter for Mack Trucks purchases by USPS is not sufficiently specific to meet this standard. See Khairallah v. United States, 43 Fed. Cl. 57, 64 (1999) (government employee does not have authority to "bind the agency to open-ended promises"); Toranzo-Claure v. United States, 48 Fed. Cl. 581, 584 (2001) ("lack of specificity" over compensation terms militated against finding alleged oral or implied-in-fact contract existed with informant).

Pure Power has failed to allege more than conclusory statements regarding the existence of a contract between it and the Government. Pure Power cannot establish the existence of a contract with the United States. Upon this basis, Pure Power's contractual claim should be dismissed for lack jurisdiction pursuant to RCFC 12(b)(1).

---

10 Pure Power seeks an injunction requiring USPS make "all future purchases" for oil filters from plaintiff. Comp. First Prayer for Relief ¶ 1.

## III. This Court Lacks Jurisdiction To Consider Pure Power's Procurement-Based Claim Because Pure Power Is Not An Interested Party

This Court's jurisdiction to consider bid protests is conferred and defined by the Tucker Act, as amended by the Administrative Disputes Resolution Act of 1996 ("ADRA"), Pub. L. No. 104-320, §§ 12(a), 28 U.S.C. § 1491(b)(1). Specifically, the Court possesses

> jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal Agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1) (emphasis added).[11]

The Tucker Act does not define the term "interested party." However, the Federal Circuit, in defining the term, has adopted a definition utilized by the Comptroller General in connection with its bid protest jurisdiction. Myers, 275 F.3d at 1370. As noted by the court of appeals, "[i]n bid protests under the Tucker Act, "we . . . construe the term 'interested party' in section 1491(b)(1) in accordance with the [standing requirements of the] CICA and hold that standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose

---

[11] We note that the Federal Circuit, in Emery Worldwide Airlines v. United States, 264 F.3d 1071, 1084 (Fed. Cir. 2001), held that USPS was a "Federal Agency" and therefore subject to suit pursuant to the Tucker act as amended by ADRA.

direct economic interest would be affected by the award of the contract or by failure to award the contract." Id. (quoting American Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001)).

Guided by the principle that a waiver of sovereign immunity is to be construed narrowly, the Federal Circuit explicitly rejected the broader definition of "interested party" embodied in the Administrative Procedures Act ("APA"). 5 U.S.C. § 702 ("[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action") in favor of the definition in the Competition in Contract Act ("CICA"); AFGE, Local 1482 v. United States, 258 F.3d 1294, 1301-02 (2001); Banknote Corp. of America v. United States, 365 F.3d 1345, 1352 (Fed. Cir. 2004). While settling upon this narrow definition of "interested party" in AFGE, the Federal Circuit also "implicitly rejected the argument that . . . the ADRA's use of the word 'procurement' separately from 'solicitation' and 'contract' requires an equally expansive definition of 'interested party.'" Alaska Central Express, Inc. v. United States, 50 Fed. Cl. 510, 518 (2001). As explained below, because Pure Power cannot properly be construed as an "interested party" under these terms, it cannot establish standing and its procurement-based claim should be dismissed for lack of subject matter jurisdiction.

### A. As, At Best, A Prospective Subcontractor, Pure Power Cannot Be An "Interested Party" And Therefore Cannot Establish Standing In This Court Pursuant To ADRA

Pure Power claims that USPS violated certain socio-economic policies set forth in its Procurement Manual when USPS allegedly "conspired to award the U.S.P.S. Oil Filter Supply Contract to GLACIER." Comp. ¶ 34; Comp. ¶¶ 33, 35-41 and Exhibit "A." However, Pure Power's complaint does not identified any such "oil filter supply contract." Rather, the facts as alleged by Pure Power suggest that Pure Power hoped "to be designated as the oil filter provider for the retrofit of Mack trucks being purchased by Postal Services [sic] as well as to retrofit previously purchased Mack trucks." Comp. ¶ 18.

A prospective supplier or subcontractor is not an "offeror" or "bidder," and thus cannot be an "interested party." Eagle Design & Management, Inc. v. United States, 62 Fed. Cl. 106, 108 (2004) (holding that "[o]ur appellate authority has squarely rejected the notion that a subcontractor qualifies as an 'interested party'"). While an "interested party" also must have a "direct economic interest" in the contested procurement decision, the threshold standing issue is the plaintiff's status as an "actual or prospective bidder or offer." Alaska Central Express, Inc., 50 Fed. Cl. at 515.

For example, the Court was not persuaded by the subcontractor-plaintiff's significant stake in the procurement

decision at issue in Eagle Design, commenting that the case law precluded "the type of scrutiny Plaintiff urges into what lies beneath this subcontractor's nomenclature." 62 Fed. Cl. at 108; see MCI Telecommunications Corp. v. United States, 878 F.2d 362, 363, 365 (Fed. Cir. 1989) (holding that a "major subcontractor" to a disappointed bidder could not be an "interested party" pursuant to the CICA because it could not establish itself as an actual or prospective bidder). Only in the unique situation where a subcontractor-plaintiff actually submitted a proposal in response to a request for proposals could the subcontractor be construed as a "prospective bidder" and therefore an "interested party." Phoenix Air Group, Inc. v. United States, 46 Fed. Cl. 90, 102 (2000) (applying GAO statutory definition of "interested party").

Because Pure Power's status is more properly characterized as, at best, a prospective supplier or subcontractor to Mack Trucks, Pure Power cannot be an "interested party," and thus has no standing pursuant to the Tucker Act. Pure Power's alleged participation in a "costly two year testing program" at best establishes that it involved itself in the program in the hopes of becoming the designated supplier to the contractor in some future procurement. Comp. ¶ 17. Pure Power's alleged involvement and the resulting costs alleged in paragraph 37 of its complaint does not have the effect of elevating it from the

status of a subcontractor to a bidder or offeror to USPS. As the Court made clear in Eagle Design, Pure Power's status as a prospective subcontractor, and not a prospective bidder or offeror, precludes the possibility of establishing standing pursuant to the Tucker Act.

B. Pure Power Is Not An "Interested Party" Notwithstanding Its Status As, At Best, A Prospective Subcontractor Because Its Protest Does Not Concern A Challenge To An Actual Bid or Solicitation

Construing the legislative history of the ADRA, the Federal Circuit determined in AFGE that "Congress intended standing under the statute to be limited to disappointed bidders" instead of a broader category of complainants encompassed by the APA. 258 F.3d at 1302. This determination was buttressed by the adoption of the definition of "interested party" coming directly from CICA. Id. Reflecting upon this decision's impact upon the scope of the ADRA, the Court instructed,

> [t]he Federal Circuit's reliance on the CICA in AFGE necessarily resulted in a holding that refers exclusively to contracts procured through competition. "Bidder" and "offeror" are terms of art in the realm of Government contracting and refer to responses to Government solicitations and requests for proposals . . . By adopting the definition of CICA, the Federal Circuit implicated an established understanding of the words "bidder" and "offeror" that cannot be divorced from the context of the CICA's requirement of solicitations and competitive proposals.

Alaska Central, 50 Fed. Cl. at 515 (emphasis added).

An action here must therefore be lodged in the context of a procurement decision in order for a party to establish itself as a "bidder" or "offer" under the terms of CICA. The existence of a solicitation is the defining feature of a competitive procurement process: "There must be 'outstanding a specific viable solicitation' before [plaintiff] can establish that it is a bidder or offeror." Fire-Trol Holdings, LLC v. United States, 62 Fed Cl. 440, 444 (2004) (quoting Omega World Travel v. United States, 9 Cl. Ct. 623, 628 (1986)) (emphasis in original).

In Alaska Central, when a small airline protested a statutory interpretation by USPS that led to a scope reduction of its mail carrying contract, the Court held that despite the fact that plaintiff enjoyed privity with the USPS,

> the plaintiff has no standing to protest this interpretation under 28 U.S.C. § 1491(b)(1) because the contract was not obtained through competitive procedures, and plaintiff is not arguing that the contract should have been subject to competitive procedures. . . Plaintiff is not a bidder or an offeror.

50 Fed. Cl. at 519. The Court noted that in the absence of the competitive procurement context, plaintiff's claim amounted to "what appears to be a quasi-entitlement." 50 Fed. Cl. at 516.

Pure Power's complaint does not allege that, at the time it involved itself in the testing program, there was an on-going competitive procurement process. Indeed, the complaint makes clear that USPS already was purchasing vehicles from Mack

Trucks. Comp. ¶ 18. Pure Power has not identified any solicitation upon which it has brought its procurement-based claim. Instead, Pure Power alleges that in the context of a testing program, its product's alleged superior performance, combined with Pure Power's status as a woman-owned business, entitled it to become a designated supplier to Mack Trucks on a purchase contract already being performed between Mack Truck and USPS. Comp. ¶¶ 21, 26.[12] Pure Power's alleged entitlement claim simply does not convert plaintiff's status into that of an actual or perspective bidder or offeror on a procurement. Therefore, Pure Power cannot establish standing pursuant to the Tucker Act and its complaint should be dismissed.

CONCLUSION

For these reasons, defendant respectfully requests that its motion to dismiss be granted and that plaintiff's complaint be dismissed.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

12 Moreover, assuming that Pure Power's procurement-based claim concerned a challenge to the purchase by USPS of Mack Trucks approximately seven years ago, any such challenge now would be moot. Comp. Ex. C,D; Emery Worldwide Airlines, Inc. v. United States, 47 Fed. Cl. 461, 469 (2000); CCL Serv. Corp. v. United States, 43 Fed. Cl. 680, 688 (1999).

s/ Bryant G. Snee
BRYANT G. SNEE
Assistant Director

OF COUNSEL:

s/ David B. Stinson

| | |
|---|---|
| CHRISTOPHER J. BURTON | DAVID B. STINSON |
| United States Postal Service | Trial Attorney |
| Washington, D.C. | Commercial Litigation Branch |
| | Civil Division |
| | Department of Justice |
| | Attn: Classification Unit |
| | 8th Floor, 1100 L St. |
| | Washington, D.C. 20530 |
| | Tele: (202) 307-0163 |
| | Fax: (202) 514-8624 |

SEPTEMBER 28, 2005 Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on September 28, 2005, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David B. Stinson
DAVID B. STINSON