**No. 05-559C**

**(Assigned to Judge Christine O. C. Miller)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**PURE POWER, INC.,**

**Plaintiff,**

**vs.**

**THE UNITED STATES,**

**Defendant.**

---

# PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

---

Michael J. Buley, Esq., Bar No. 164249
Law Offices of Michael J. Buley
20271 S. W. Birch Street, Suite 100
Newport Beach, California 92660
Telephone: (949) 752-1161
Facsimile: (949) 251-0337

November 16, 2005

Attorney for PURE POWER, INC.

# TABLE OF CONTENTS


**STATEMENT OF THE CASE** ........ 1

I. **Nature of the Case** ........ 1

II. **Issues Presented** ........ 4

A. Whether this Court has subject matter jurisdiction to consider Pure Power's contract claim pursuant to 28 U.S.C. § 1491 (a) (1), where Pure Power's complaint contains well-pleaded allegations of the existence of an express or implied-in-fact contract between Pure Power and the United States. .... 4

B. Whether Pure Power, as a prospective subcontractor to be designated by USPS, is an "interested party" and thus can establish standing in this Court to bring a procurement-based protest pursuant to 28 U.S.C. § 1491(b) (1) ........ 4

C. Whether Pure Power can establish standing as an "interested party" pursuant to U.S.C. § 1491(b) (1) on the basis that USPS's express or implied agreement concerns an actual solicitation ........ 4

III. **Statement of Facts** ........ 4

A. **Summary of Argument** ........ 5

B. **Argument** ........ 6

(1) **Plaintiff bears the burden of establishing that this Court possesses jurisdiction to consider this action** ........ 6

IV. **STANDARD OF REVIEW** ........ 7

A. **Federal Rules of Civil Procedure 12(b)(1)** ........ 7

(1) **Pure Power has alleged sufficient facts establishing the existence of an express or implied-in-fact contract between Pure Power and the United States** ............................ 8

(2) **Pure Power is an "interested party" for purposes of jurisdiction** .............................. 10

(3) **Pure Power's violation of Policies and Procedures Manual claim is properly before this Court** ............................... 12

V. **CONCLUSION** ................................................................. 17

# TABLE OF AUTHORITIES

## CASES

Adams v. United States
20 Cl. Ct. 132, 133 n.1 (1990) .......................................................... 7

Aetna Casualty & Surety Co. v. United States
228 Ct. Cl. 146, 151, 655 F.2d 1047, 1051 (1981) ............................. 8

American Fed'n of Gov't Employees v. United States
258 F.3d 1294, 1302 (Fed. Cir. 2001)................................................ 11

AT&T v. U.S.P.S.
(N.D. Ill 1997) 21 F.Supp. 811 ............................................... 11, 12, 14, 16

AT&T Corp. v. United States Postal Service
57 F. Supp. 2d 522 (N.D. Ill 1998) ..................................................... 13

City of Cincinnati v. United States
153 F.3d 1375, 1377 (Fed. Cir. 1998)................................................. 9

City of El Centro v. United States
922 F.2d 816, 820 (Fed. Cir. 1990)...................................................... 9

City of Milwaukee v. Block
823 F.2d 1158, 1165 (7th Cir. 1987).................................................... 14

Commodity Trend Service, Inc. v. Commodity Futures Trading Comm'n
(7th Cir. 1988) 149 F.3d 679, 685........................................................ 8

Concept Automation
887 F. Supp. 6 (D.D.C. 1995) ........................................................... 15

Cupey Bajo Nursing Home, Inc. v. United States
23 Cl. Ct. 406, 411-12 (1991) .......................................................... 7

Emery Worldwide Airlines, Inc. v. United States
264 F.3d 1071, 1080-83 (Fed. Cir. 2001) ...................... 2, 10, 13, 15, 16

Essen Mall Properties v. United States
21 Cl. Ct. 430, 445 (1990) ........................................................... 9

Farmers Grain Co. of Esmond v. United States
29 Fed. Cl. 684, 686 (1993) .......... 6

Flamingo Industries v. United States Postal Serv.
392 F.3d 985, 994 (9th Cir. 2002).......... 2

Flamingo Industries (USA) v. U.S. Postal Service
(9th Cir. 2002) 302 F.3d 985.......... 12, 13, 16, 17

Gibbs v. Buck
307 U.S. 66, 72 (1939) .......... 7

Indium Corp. of America v. Semi-Alloys, Inc.
781 F.2d 879, 884 (Fed. Cir. 1985).......... 7

McLachlan v. Bell
(9th Cir. 2001) 261 F.3d 908, 909.......... 7

McNutt v. General Motors Acceptance Corp.
298 U.S. 178, 189-90 (1936).......... 6

Myers
275 F.3d at 1370 .......... 11

Merritt v. United States
267 U.S. 338 (1925) .......... 9

Morrison v. Amway Corp.
(11th Cir. 2003) 323 F.3d 920, 925.......... 8

Peoples, Gas, Carter Chevrolet Agency, Inc. v.
United States Postal Service
19 F. Supp 2d 1246 .......... 13, 15, 16

Peoples, Gas, Light and Coke Co. v. U.S.P.S.
(7th Cir. 1981) 658 F.2d 118.......... 11, 13, 15

Pure Power! Inc. v. United States Postal Serv.
83 Fed. Appx. 901 (9th Cir. Dec. 11, 2003) .......... 2

Reynolds v. Army and Air Force Exchange Serv.
846 F.2d 746, 748 (Fed. Cir. 1988).......... 6

Saladino v. United States
62 Fed. Cl. 782, 786 (2004) .......... 6

Scanwell Laboratories v. Schaeffer
424 F. 2d 859 (D.C. Cir. 1970) .......... 15

United States v. Testan
424 U.S. 392 .......... 8

Thomson v. Gaskill,
315 U.S. 442, 446 (1942) .......... 6

Total Med. Mgmt., Inc. v. United States
104 F.3d 1314, 1319 (Fed. Cir. 1997) .......... 9

United States v. Johnson Controls, Inc.
713 F.2d 1541, 1550-51 (Fed. Cir. 1983) .......... 9

Village of Palatine v. United States Postal Serv.
742 F.Supp.1337, 1381 (N.D. Ill.1990) .......... 16

**STATUTES**

Administrative Disputes Resolution Act of 1996
("ADRA"), Pub. L. No. 104-320 .......... 10

California Business & Professions Code Section 17200 .......... 1

Federal Rules of Civil Procedure Rule 12(b)(1) .......... 7, 8

39 Code of Federal Regulations § 606.100 .......... 16

28 U.S.C. § 1631 .......... 1

28 U.S.C. § 1491 .......... Throughout

28 U.S.C. § 1339 .......... 8

39 U.S.C. § 401 .......... 8

39 U.S.C. § 409 .......... 8

## STATEMENT OF THE CASE

### I. Nature of the Case

The United States District Court for the Central District of California transferred this action, pursuant to 28 U.S.C. § 1631, to the Court of Federal Claims by order dated November 23, 2004. Pacer Docket (C.D. Ca.) No. 00-CV-00709 GLT EE (Entry No. 1).[1] In response to Pure Power! Inc.'s ("Pure Power") Complaint filed in the District Court, the Government filed a Motion to Dismiss, which the District Court granted in an Order dated March 12, 2001, finding that the court lacked jurisdiction to review a United States Postal Service ("USPS") procurement decision. Pacer Docket (C.D. Ca.) No. 00-CV-00709 GLT EE (Entry No. 24).

Plaintiff, Pure Power, filed its original Complaint in the District Court on July 21, 2000 (Entry No. 1).

The case was not ripe for appeal as Pure Power still maintained claims against additional parties and the ruling in favor of United States Postal Service ("USPS") for dismissal had not resulted in a final judgment resolving the entire action as to all parties. The initial Complaint contained causes of action for civil conspiracy, fraud, and violation of California Business & Professions Code Section 17200 et seq., among others, arising out of the suspicious nature of the contract designation which is at the source of this dispute. The District Court

---

[1] Docket entries from the District Court case are available through Pacer at https://ecf.cacd.uscourts.gov/.

agreed with Plaintiff's counsel and the then remaining defendants Glacier Metal Company Limited ("Glacier") and T.F. Hudgins ("Hudgins") that an ongoing internal investigation that was being conducted by the Inspector General's Office should be completed before extensive, costly discovery was undertaken. The eventual report was inconclusive and was delivered to Plaintiff on November 26, 2001. A decision was then made by Plaintiff to dismiss the remaining defendants and proceed with the appeal. (Declaration of Michael J. Buley at ¶¶ 2, 3, 4, and 5.)

Pure Power timely appealed from the Court's Order granting the Government's Motion to Dismiss. While that appeal was pending, the United States Court of Appeals for the Ninth Circuit issued a decision in Flamingo Industries v. United States Postal Serv., 392 F.3d 985, 994 (9th Cir. 2002), rev'd on other grounds, 540 U.S. 736 (2004), applying a then-recent decision of the United States Court of Appeals for the Federal Circuit, Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1080-83 (Fed. Cir. 2001), holding the Tucker Act, 28 U.S.C. § 1491(b) (1), applicable to USPS.

In the wake of Flamingo, the Ninth Circuit issued a memorandum decision reversing the district Court's order dismissing the complaint and remanded the matter to the District Court on the issue of subject matter jurisdiction. Pure Power! Inc. v. United States Postal Serv., 83 Fed. Appx. 901 (9th Cir. Dec. 11, 2003) (unpublished). Following remand, Pure Power reformulated its Complaint to include a breach of contract claim. Pacer Docket (C.D. Ca.) No. 00-CV-00709

GLT EE (Entry Nos. 64-66) (Second and Third Amended Complaints). The Government filed a Motion to Dismiss and Plaintiff filed its Opposition. The parties subsequently stipulated to transfer of the case to this Court. See Order of November 23, 2004 and accompanying stipulation.

Pure Power filed its Third Amended Complaint in this Court, containing two causes of action arising out of the alleged failure of USPS to designate Pure Power as an oil filter supplier for a contract between the USPS and Mack Trucks, Inc. ("Mack Trucks"). Comp. ¶ ¶ 8-22.[2] Pure Power's first cause of action, "Violation of U.S.P.S. Policy and Procedure," alleges USPS violated codified policies and procedures set forth in the USPS Procurement Manual. Comp. ¶¶ 33-41 and Exhibit "A." Pure Power's Second Cause of Action, "Breach of Contract," stems from an alleged "agreement" between unnamed USPS personnel and Pure Power in early 1996. Comp. ¶ 42. Pure Power alleges that, based upon the alleged "agreement," if the Pure Power filter was successful in a field test, it "would be designated as the sole source for retrofits of oil filters on Mack trucks purchased and to be purchased by" USPS. Comp. ¶ 43.

//

//

//

[2] "Comp. ¶___" refers to Plaintiff's Third Amended Complaint. "Comp. Ex. ___" refers to exhibits attached to Plaintiff's Third Amended Complaint.

## II. Issues Presented

A. Whether this Court has subject matter jurisdiction to consider Pure Power's contract claim pursuant to 28 U.S.C. § 1491 (a) (1), where Pure Power's complaint contains well-pleaded allegations of the existence of an express or implied-in-fact contract between Pure Power and the United States.

B. Whether Pure Power, as a prospective subcontractor to be designated by USPS, is an "interested party" and thus can establish standing in this Court to bring a procurement-based protest pursuant to 28 U.S.C. § 1491(b) (1).

C. Whether Pure Power can establish standing as an "interested party" pursuant to section 28 U.S.C. § 1491(b) (1) on the basis that USPS's express or implied agreement concerns an actual solicitation.

## III. Statement of Facts

Pure Power is a California corporation which manufactures reusable oil filters, lubricants, and related products. Comp. ¶¶ 1, 16. Pure Power alleges that it was contacted in 1996 by USPS and asked "to take part in a costly two year testing program" wherein its oil filter would be tested against a oil filter manufactured by Glacier. Comp. ¶ 17. According to the Complaint, the company with the prevailing filter would be "designated as the oil filter provider for the retrofit of Mack Trucks being purchased by Postal Service as well as to retrofit previously purchased Mack trucks." Comp. ¶ 18.

According to the Complaint, upon completion of the testing, Mack Trucks allegedly notified Pure Power that its oil filter had out-performed Glacier's filter.

Comp. ¶ 20. Pure Power alleges that, despite these alleged test results, the competitor's product was selected by USPS "as the specified replacement oil filters on the Mack Truck, Inc.'s contract." Comp. ¶ 26. By letter dated January 26, 1999, addressed to the USPS Vice President of Purchasing and Materials, Pure Power protested Mack Truck's use of the competitor's product. Comp. Ex. C; Comp. ¶ 26. By letters dated April 29, 1999, and June 23, 1999, USPS responded to Pure Power's concerns, admitting the fact that USPS had selected the Glacier filter. Comp. Exs. D and E. Pure Power has further alleged that USPS has improperly interfered with ongoing business that Pure Power had been engaged in individual USPS vehicle maintenance facilities (¶¶ 30, 31, 32 and 41).

### A. Summary of Argument

Pure Power's breach of contract claim does satisfy the jurisdictional prerequisites of 28 U.S.C. § 1491 (a) (1) because Pure Power's Complaint provides adequate statements regarding the existence of an agreement with the United States and does supply sufficient facts to support the basic elements of an express or implied-in-fact contract. Pure Power has provided sufficient information establishing a government employee dealt with Pure Power in regards to this contract and that the individual had authority to bind the United States in contract or that the United States otherwise ratified or adopted the employees actions. Under these allegations, the Court has jurisdiction to consider Pure Power's claim.

With regard to Pure Power's allegation of a violation of the USPS Procurement Manual, there is a jurisdictional basis for such a claim because Pure Power is an "interested party" pursuant to the terms of 28 U.S.C. § 1491(b)(1). Pure Power's status as a prospective subcontractor to Mack Trucks on a contract to be performed between United States and Mack Trucks involved the United States in a purchasing activity. USPS was the party who was specifically selecting the subcontractor to be designated in the Mack truck contract. Pure Power's claim does, in fact, involve conduct of the government which is a sufficient purchasing activity to place it within the jurisdictional confines of 28 U.S.C. § 1491(b)(1).

**B. Argument**

**(1) Plaintiff bears the burden of establishing that this Court possesses jurisdiction to consider this action.**

Plaintiff bears the burden of establishing by preponderant evidence that the Court possesses jurisdiction to consider this suit. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189-90 (1936); Reynolds v. Army and Air Force Exchange Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Saladino v. United States, 62 Fed. Cl. 782, 786 (2004). Where "a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof." Thomson v. Gaskill, 315 U.S. 442, 446 (1942); accord Farmers Grain Co. of Esmond v. United States, 29 Fed. Cl. 684, 686 (1993) (where motion "challenges the truth of the jurisdictional facts alleged in the

complaint . . . the court may consider relevant evidence in order to resolve the factual dispute").[3]

In deciding a Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure Rule 12(b) (1), the Court may consider evidentiary matters outside the pleadings. Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985), cert. denied, 479 U.S. 820 (1986); Adams v. United States, 20 Cl. Ct. 132, 133 n.1 (1990). If the factual basis for jurisdiction is challenged, the allegations in the Complaint are not controlling and only uncontroverted factual allegations are accepted as true for purposes of the motion. Gibbs v. Buck, 307 U.S. 66, 72 (1939).

However, if the motion is determined based upon declarations and without an evidentiary hearing, the Complaint's factual allegations still must be accepted as true. (McLachlan v. Bell, (9th Cir. 2001) 261 F.3d 908, 909.)

## IV. STANDARD OF REVIEW

### A. Federal Rules of Civil Procedure Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to seek dismissal of an action for lack of subject matter jurisdiction. (See FRCP 12(b)(1).)

//

//

---

3 This motion is directed toward the Court's jurisdiction and properly is styled a Motion to Dismiss, rather than a Motion for Summary Judgment. Reynolds, 846 F.2d at 747; Cupey Bajo Nursing Home, Inc. v. United States, 23 Cl. Ct. 406, 411-12 (1991) (Motion for Summary Judgment based upon lack of jurisdiction treated as Motion to Dismiss).

Where a FRCP 12(b)(1) motion is based on extrinsic evidence, no presumption of truthfulness attaches to a plaintiff's allegations. (Commodity Trend Service, Inc. v. Commodity Futures Trading Comm'n, (7th Cir. 1988) 149 F.3d 679, 685; Morrison v. Amway Corp., (11th Cir. 2003) 323 F.3d 920, 925.)

Plaintiff acknowledges that it has plead jurisdiction in this Court as being premised upon 28 U.S.C. § 1339 and 39 U.S.C. §§ 401, 409(a). This is a readily correctable oversight which may be solved through grant of leave to amend.

As will be set out herein, this Court does, in fact, have jurisdiction over this matter under the Tucker Act, 28 U.S.C. § 1491.

**(1) Pure Power has alleged sufficient facts establishing the existence of an express or implied-in-fact contract between Pure Power and the United States.**

The central provision granting consent to suit in this Court is the Tucker Act, 28 U.S.C. § 1491. United States v. Testan, 424 U.S. 392 at 397; Aetna Casualty & Surety Co. v. United States, 228 Ct. Cl. 146, 151, 655 F.2d 1047, 1051 (1981). Pursuant to this statute, an action may be maintained in this Court if it is "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491 (1982).

To invoke jurisdiction pursuant to the Tucker Act under a contractual right theory a plaintiff must establish the existence of a contractual relationship with the

United States as a jurisdictional prerequisite. United States v. Johnson Controls, Inc., 713 F.2d 1541, 1550-51 (Fed. Cir. 1983) (tracing the privity requirement to Merritt v. United States, 267 U.S. 338 (1925)).

The requirements to establish a binding contract with the United States, which are identical for both express and implied contracts, are "a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract." Total Med. Mgmt., Inc. v. United States, 104 F.3d 1314, 1319 (Fed. Cir. 1997) (citing City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990)); City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998).

When a Federal employee exceeds his or her authority, the Government can "disavow the [agent's] words and is not bound by an implied contract." Essen Mall Properties v. United States, 21 Cl. Ct. 430, 445 (1990).

In the case at hand, there is evidence that USPS, through an authorized federal employee, entered into an express agreement with Pure Power.

Specifically, documents submitted with this Opposition as part of the Declaration of Michael J. Buley establish that USPS employee Richard Harris represented to Pure Power that if Pure Power took part in the USPS filter tests, and won, it would be designed the specified filter in the Mack Truck/USPS contact. Specifically, these allegations are supported by the conduct of Pure Power in taking part in the tests and the documents evidencing that Richard Harris ordered

the testing; the funding of which was authorized and approved by USPS. The Complaint has attached to it as Exhibit "D" a letter from USPS manager, James Buie, which clearly states USPS selected the competitor's filter over the Pure Power filter. The letter does not disavow any contractual relationship or the terms as understood by the parties.

In the present case, Pure Power should be rightfully allowed to amend the Complaint in order to identify USPS employees Richard Harris and James Bui as the USPS contracting employees.

**(2) Pure Power is an "interested party" for purposes of jurisdiction.**

This Court's jurisdiction to consider bid protests is conferred and defined by the Tucker Act, as amended by the Administrative Disputes Resolution Act of 1996 ("ADRA"), Pub. L. No. 104-320, § 12(a), 28 U.S.C. § 1491(b) (1). Specifically, the Court possesses:

> jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal Agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b) (1) (emphasis added).[4]

The Tucker Act does not define the term "interested party." However, the Federal Circuit, in defining the term, has adopted a definition utilized by the

---

[4] We note that the Federal Circuit, in Emery Worldwide Airlines v. United States, 264 F.3d 1071, 1084 (Fed. Cir. 2001), held that USPS was a "Federal Agency" and, therefore, subject to suit pursuant to the Tucker act as amended by ADRA.

Comptroller General in connection with its bid protest jurisdiction. Myers, 275 F.3d at 1370. As noted by the court of appeals, "[i]n bid protests under the Tucker Act, "we . . . construe the term 'interested party' in section 1491(b) (1) in accordance with the [standing requirements of the] CICA and hold that standing under § 1491(b) (1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Id. (quoting American Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001)).

The competitive interests of a prospective supplier is sufficient to confer standing. (See AT&T v. U.S.P.S., (N.D. Ill 1997) 21 F.Supp. 811.)

AT&T v. U.S.P.S. involved a "potential supplier and bidder" who sought review of U.S.P.S. decisions that awarded several sole source contracts for the management of public pay phone to a company other that AT&T. AT&T sought declaratory and injunctive relief on the basis that the U.S.P.S. violated certain sections of its own procurement manual. Specifically, sections 1.7.2.a, 4.1.1.b and 4.4.1.c. relating to the use of sole source or noncompetitive procedures in obtaining goods and services for the U.S.P.S. After a review of the relevant case law on the issue of judicial review of Postal Service procurement decisions, the AT&T court chose to follow that part of the Peoples, Gas, Light and Coke Co. v. U.S.P.S., (7th Cir. 1981) 658 F.2d 118 decision that held Postal Service procurement decisions were in fact subject to judicial review. Furthermore, the court held that AT&T as a potential supplier or potential bidder had adequate

standing to pursue the claim. In reaching these conclusions the court stated, "The policy further suggests that the competitive interest of a prospective supplier who has not been given an opportunity to compete is an interest in competition *vel non*, and not just economic self interest ... In the instant case, the Court can consider the rules promulgated by the Postal Service as law to apply. Although Congress' clear intent was for the Postal Service to be generally exempted from the public law and instead treated like a private business, the regulations reinstate binding competitive obligations on the Postal Service. Permitting a lawsuit by a potential supplier does not thwart Congress' intent." (AT&T v. U.S. Postal Service, *supra*, 21 F.Supp.2d at pp. 816-817.)

**(3) Pure Power's violation of Policies and Procedures Manual claim is properly before this Court.**

The Tucker Act expressly provides for jurisdiction where an interested party alleges violation of statute or regulation in connection with a procurement or proposed procurement.

This includes claims against USPS for violation of USPS's codified policies and procedures. (See Flamingo Industries (USA) v. U.S. Postal Service, (9th Cir. 2002) 302 F.3d 985.

The Flamingo decision first found that the lawsuit filed in July of 2000 came within 28 U.S.C. § 1491 (b)(1) and, acknowledging the courts jurisdiction over a claim for violation of the U.S. Postal Service procurement manual, found plaintiff in that case had standing to prosecute such a claim. (Id at 994-995.)

It is important to note that the Flamingo decision relied upon Emery World Wide Airlines, Inc. v. United States 264 F.3d 1071 (Fed. Cir. 2001) and favorably cited the Peoples Gas, Light and Coke Co. v. United States Postal Service, 658 F.2d 118 (7th Cir. 1981) decision from the Seventh Circuit. Peoples Gas, ruled that a district court does have authority to review claims of violation of the U.S. Postal Service procurement manual and Emery World Wide favorably cites Peoples Gas, Carter Chevrolet Agency, Inc. v. United States Postal Service, 19 F. Supp 2d 1246 and AT&T Corp. v. United States Postal Service, 57 F. Supp. 2d 522 (N.D. Ill 1998); all decisions which find Federal District Court jurisdiction over claims against the U.S. Postal Service for violation of procurement policy and procedures. (Emery, at 1083.)

The, Peoples Gas, decision held that a claim alleging violations of U.S. Postal Service procurement regulations are subject to judicial review. By way of background, Peoples Gas was a case involving a potential supplier of energy who challenged the U.S. Postal Service's decision to use electrical energy instead of natural gas. The challenge was premised on the supplier's belief that the U.S. Postal Service failed to comply with their procurement manual rules and regulations when exercising their discretion in selecting an energy source. Specifically, the plaintiff alleged that, pursuant to U.S. Postal Service policy and procedure, the U.S. Postal Service was to select the most cost effective and environmentally safe energy source. The Court in Peoples Gas determined that U.S. Postal Service's decisions of this nature are subject to judicial review.

However, the decision went on to find that the potential supplier lacked standing to prosecute his claim in the Federal Court. The finding on standing was severely criticized in a dissent included in the decision, and in later decisions within the same circuit was all but overturned. (See Peoples Gas (dissent) at pp.1202-1205; AT&T v. U.S. Postal Service, *supra,* 21 F.Supp.2d at pp.816; City of Milwaukee v. Block 823 F.2d 1158, 1165 (7th Cir. 1987).[5]

Regarding the subject matter jurisdiction issue involving U.S. Postal Service procurement decisions, the Peoples Gas Court stated:

> It can be reasonably assumed therefore, that an agency's exemption from the provisions of the [APA] does not negate the applicability of common law review principles that pre-existed and operate apart from the subsequent codification. The exemption of the Postal Service from all Federal Law dealing with public or Federal contracts pertains only to the independent nature of the operations of the Postal Service under the Postal Service Reorganization Act. **However, this general exemption does not reach the governmental limitations contained in the Postal Service's own regulations. We conclude that the exemptions found in section 410 of the Postal Reorganization Act do not manifest a congressional intent to foreclose all judicial review of alleged violations by the Postal Service's procurement regulations.** [FN]
> (Emphasis added) (Peoples Gas at p.1191.)

[5] "[T]he Seventh Circuit in City of Milwaukee explicitly acknowledged that its prior analysis [on the issue of standing] in People Gas,..., was premised on a misreading of the holding in Association of Data Processing. This acknowledgement strongly suggests that the Seventh Circuit would apply the broad grant of standing found in Association of Data Processing and Clarke to non-APA cases." (AT&T v. U.S. Postal Serv., *supra,* 21 F.Supp.2d at p.816.)

In referencing Scanwell Laboratories v. Schaeffer 424 F. 2d 859 (D.C. Cir. 1970) the Peoples Gas Court stated "The court observed [in Scanwell] that 'contracting' officials can exercise discretion upon a broad range of issues confronting them; they may not, however, opt to act illegally. When the bounds of discretion give way to the stricter boundaries of law, administrative discretion gives way to judicial review." (Peoples Gas. at p.1192.)

The Carter Chevrolet Case, which was cited in Emery Worldwide, is a 1997 case out of the Western District of Oklahoma. The case involved a disappointed bidder who was not awarded a U.S. Postal Service contract to provide the U.S. Postal Service with cargo vans.

Carter Chevrolet addressed whether or not U.S. Postal Service procurement decisions are subject to judicial review. The court in Carter Chevrolet identified the two leading cases on the issue at that time as being Peoples Gas and Concept Automation, 887 F. Supp. 6 (D.D.C. 1995). After analyzing both Concept Automation and Peoples Gas the court in Carter Chevrolet concluded that whether or not the U.S. Postal Service violates its own procurement manual is an issue properly subject to judicial review. (Carter Chevrolet, *supra*, at pp.1248-1249.)

"[I]t is abundantly clear that the exemption from title 5, the APA, only applies where the Postal Service has not preserved the prior law in 'rules or regulations.' Even if one were to question this interpretation, the statute's exception for laws that 'remain in force as rules or regulations' certainly makes it

uncertain whether Congress intended to exempt the Postal Service from judicial review when it is acting subject to rules and regulations of its own creation."

In the present action, Carter's Complaint alleges that the Postal Service violated its own procurement manual. This manual is incorporated by reference into the Code of Federal Regulations, 39 C.F.R. § 606.100, and on numerous occasions has been held to have the force and effect of law. [Citations omitted.] Therefore, the court finds that the Postal Service has not made a showing by "clear and convincing evidence" that Congress intended to exempt postal procurement actions from judicial review when those actions are covered by a U.S. Postal Service regulation "… [T]he court agrees with the statement of another federal district court that 'courts may nevertheless apply the statute's (APA) standards of review when litigants complain that the agency violated its own regulations.' [Village of Palatine v. United States Postal Serv., 742 F.Supp.1337, 1381 (N.D. Ill.1990)]." (Emphasis added) (Carter Chevrolet at pp. 1248-1249.)

The Ninth Circuit, by its Flamingo decision, has resolved the issue of subject matter jurisdiction. The Flamingo decision, with its reliance on Emery Worldwide and Peoples Gas appears to agree with the holdings in those decisions as well as Carter Chevrolet and AT&T.

In Flamingo this Court found that 28 U.S.C. §1491 applied to the U.S. Postal Service and conferred original and subject matter jurisdiction over individuals and entities alleging the U.S. Postal Service violated its procurement policies and procedures. (Flamingo at 994-995.)

The Flamingo decision has, thus, conferred subject matter jurisdiction over a claim such as Pure Power's for violation of Postal Service's procurement policies and procedures.

## V. CONCLUSION

For the above-stated reasons, Defendant's Motion should be denied or, if granted, should be done so with leave to amend in regards to the correctable errors identified.

Respectfully submitted,

LAW OFFICES OF MICHAEL J. BULEY

By: s/Michael J. Buley
Michael J. Buley
20271 S. W. Birch Street, Suite 100
Newport Beach, California 92660
Telephone: (949) 752-1161
Facsimile: (949) 251-0337

Attorney for PURE POWER, INC.

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on this 17th day of November 2005, I caused to be sent VIA United States mail (first class, postage prepaid) copies of "PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS" addressed as follows:

David B. Stinson
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L. Street
Washington, DC 20530

s/ Michael J. Buley