**No. 05-559C**

**(Assigned to Judge Christine O. C. Miller)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**PURE POWER, INC.,**

**Plaintiff,**

**vs.**

**THE UNITED STATES,**

**Defendant.**

---

# DECLARATION OF MICHAEL J. BULEY OFFERED IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S FRCP RULE 12(b)(1) MOTION TO DISMISS

---

Michael J. Buley, Esq., Bar No. 164249
Law Offices of Michael J. Buley
20271 S. W. Birch Street, Suite 100
Newport Beach, California 92660
Telephone: (949) 752-1161
Facsimile: (949) 251-0337

November 16, 2005

Attorney for PURE POWER, INC.

I, Michael J. Buley, declare:

1. I am an attorney with the Law Offices of Michael J. Buley, the attorney of record for plaintiff, Pure Power, Inc. ("Pure Power"). I am duly admitted to practice before the Federal Court of Claims. I have firsthand knowledge of all the information attested to herein except for that which I state as being based upon my information and belief.

2. When this case was originally filed in the District Court, additional parties included T. F. Hudgings and Glacier Metal Company Ltd.

3. Once United States Postal Service ("USPS") was successful with its initial Motion to Dismiss in the District Court for the Central District of California, there was a stay on discovery regarding the remaining parties while the parties awaited the outcome of an internal investigation being conducted by the USPS Office of the Inspector General.

4. Attached hereto as Exhibit "A" and made a part hereof by this reference is a true and correct copy of the OIG's final redacted report received by my office on or about November 26, 2001.

5. After this report was issued, the remaining defendants were dismissed due to the inconclusive nature of the report and I proceeded with Pure Power's appeal.

6. Once Pure Power was successful in its appeal discovery commenced and USPS produced an initial disclosure of documents.

7. As part of that production, USPS produced true and correct copies of the following exhibits attached hereto and made a part hereof by this reference:

Exhibit "B": Postal Service Authorization for testing which is the subject matter of this litigation.

Exhibit "C": Attachment to Part 1 – schedule referencing USPS as a party to receive test results.

Exhibit "D": Requisition for supplies for purposes of running tests paid for by USPS which were the subject matter of this litigation.

8. Attached hereto as Exhibit "E" and made a part hereof by this reference is a true and correct copy of the April 9, 1999 letter from USPS manager, James Bui, to Fran Cyrus of Pure Power reflecting that USPS ultimately made the decision as to which filter to designate in the Mack Truck contract.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and have so stated and execute this declaration on the 17th of November, 2005 in Newport Beach, California.

s/
Michael J. Buley

# EXHIBIT "A"

EXHIBIT "A"

OFFICE OF INSPECTOR GENERAL

November 26, 2001

Mr. Michael J. Buley
Law Offices of Michael J. Buley
20271 S.W. Birch Street
Suite 100
Newport Beach, CA 92660

Dear Mr. Buley:

This responds to your Freedom of Information Act (FOIA) request pursuant to 5 U.S.C. § 552, which was received September 17, 2001. Your request was for a copy of any books, reports, documents, printed material, photographs, or other tangible objects either generated by the Office of Inspector General or obtained from others during the course of an investigation into the Postal Service's conduct in relation to the OIG's investigation identified by file number 99RI095CA000.

You also requested all documents pertaining to the file number above, to include the investigations into the circumstances surrounding the Contract between the United States Postal Service and Mack Truck Contract number 102590-96-D-1798 including but not limited to OIG's entire case file, written and electronically recorded interviews with third party witnesses and any other records that references file number 99RI095CA000.

We are releasing to you the Report of Investigation that was conducted on file number 99RI095CA000. However, the identities of certain individuals have been redacted in accordance with FOIA Exemption (b)(7)(c), which could reasonably be expected to constitute an unwarranted invasion of person personal privacy. In addition, we are currently evaluating the pertinent work papers you requested and a release determination will be made shortly.

1735 N LYNN ST
ARLINGTON VA 22209-2020
(703) 248-2100
FAX: (703) 248-2256

Under the FOIA, you have the right to appeal the denial of information if a written request is filed within 30 days of the date of this letter. Both the letter and the envelope should be clearly marked, "FOIA APPEAL." You should include a copy of the initial request and this response, as well as your reasons and arguments supporting disclosure of the information. The appeal should be forwarded to the attention of Andrea Bernado at 1735 N. Lynn Street, Suite 10000, Arlington, VA 22209-2020.

Sincerely,

Loren Sciurba
Assistant General Counsel

**UNITED STATES POSTAL SERVICE**
**OFFICE OF INSPECTOR GENERAL**
1735 NORTH LYNN STREET
ARLINGTON, VA 22209-2020

**APPROVED BY:** [redacted]

**DATE: November 1, 2001**

**CASE NUMBER: 99RI095CA000** **TITLE: MACK TRUCK FILTERS**
**DATE OPENED: September 7, 1999** **CROSS REFERENCE #:**
**REPORTING OFFICE: ARLINGTON** **CASE AGENT:** [redacted]

## REPORT OF INVESTIGATION

**PERIOD COVERED: FROM** September 7, 1999 **TO** November 1, 2001

**LOCATION OF OFFENSE:** N/A

**STATUS OF CASE:**

☐ **CONTINUING INVESTIGATION**
☐ **SIGNIFICANT DEVELOPMENT**
☐ **PROSECUTION REPORT**
☐ **PENDING JUDICIAL ACTION**
☐ **PENDING ADMINISTRATIVE ACTION**
☐ **PENDING OTHER ACTION**
☐ **REFERRAL TO ANOTHER AGENCY**
☒ **CLOSED**

**JOINT AGENCIES:**

**DISTRIBUTION:**



RESTRICTED INFORMATION | This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

## TABLE OF CONTENTS


I. INTRODUCTION

II. SYNOPSIS

III. NARRATIVE

IV. LAW ENFORCEMENT AND OTHER RECORDS

V. PROSECUTION CONSIDERATION

VI. JUDICIAL/ADMINISTRATIVE ACTION

VII. SUBJECTS

VIII. DISPOSITION OF EVIDENCE, CONTRABAND, AND PROPERTY

IX. STATUS OF INVESTIGATION

X. EXHIBITS




| | |
|---|---|
| **RESTRICTED INFORMATION** | This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution. |

## I. INTRODUCTION

On September 7, 1999, Special Agent [redacted] initiated this investigation based upon information that irregularities had taken place in a Postal Service contract award. The Postal Service contract was for the purchase of the 1999 Mack Trucks that was awarded on August 26, 1998. The complaint originated from [redacted] located in [redacted] alleges that there were numerous improprieties in the Postal Service Mack Truck award, including but not limited to: bribery (18 U.S.C. 201), mismanagement, and administrative violations. [redacted] stated that the Postal Service specified the use of Spinner brand filters in the solicitation and after the award pressured Mack Trucks to use them even though his filters (Pure Power) had been tested and rated better.

On or about October 1999, Special Agent [redacted] transferred case number 99RI095CA000 (Mack Truck Filters) to Special Agent [redacted]

## II. SYNOPSIS

On August 28, 1998, the Postal Service entered into a contractual agreement with Mack Trucks Inc. to purchase its 1999 vehicles. The agreement specified the use of Spinner oil filters which are distributed by T. F. Hudgins, Inc located in Houston, Tx. The Postal Service did not offer a separate contract or solicitation specifically for the purchase of oil filters or any other component of the vehicle. The Postal Service has specified the use of Spinner filters in the solicitation of the Mack truck vehicle purchases since 1992.

The basis of the complainant's allegations are in large part centered upon the fact that Mack Trucks Inc. was reluctant to use the specified filters due to warranty concerns. Based on this concern, Mack Trucks, Inc. conducted filtration tests to measure the specified filter's efficiency and compatibility with the Mack Truck. Before the commencement of the tests, [redacted] of Postal Service Headquarters, Vehicle Maintenance, brought [redacted] of Pure Power to the site to test his filter as well. At the conclusion of the tests, the laboratory concluded that the filter owned by [redacted] had rated better on one component of the test. The investigation determined that [redacted] involvement in the test was arranged solely by [redacted] and was not a function connected with the Mack Truck purchase.

The investigation disclosed that the filtration test was not a prelude to a solicitation or contract by the Postal Service for oil filters. Additionally, the investigation revealed that there was no correlation between the filtration test and a potential procurement of oil filters for the Mack Truck purchase. The investigation revealed that there was no illegal or unethical conduct by Postal Service and contract personnel.



RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

## III. NARRATIVE

On July 19, 1999, Special Agent [redacted] and Special Agent [redacted] interviewed [redacted] in Huntington Beach CA. [redacted] stated that he was contacted by [redacted] of Postal Service Engineering in 1996 to participate in a study/comparison of the Pure Power filter and the Spinner filter. [redacted] added that he was notified in December 1998 that [redacted] of Mack Trucks that the Pure Power filter performed more efficiently than the Spinner. [redacted] relayed that [redacted] informed him that the Postal Service had already written the Spinner filters into the specifications. (Exhibit 1- Activity Report/Interview)

On July 19, 1999, Special Agent [redacted] interviewed Jon Martin, Manager, Postal Service Vehicle Maintenance, Huntington Beach CA. Martin informed [redacted] that the facility had been having problems with low oil pressure on new GM trucks equipped with Spinner filters. At some point it was deduced that the problem was originating from the oil filters and the maintenance facilities began bypassing the filters and using original manufacturer filtration systems. (Exhibit 2- Activity Report/Interview).

On August 20, 1999, Special Agent [redacted] interviewed [redacted] Senior Project Engineer for Mack Trucks, Hagerstown MD. [redacted] stated that the Postal Service specified Spinner filters in the 1996/1997 truck purchase. [redacted] stated that he did not approve of the Spinner filters because they did not meet Mack Truck requirements. [redacted] stated that he was being pressured by Mack Government Sales representative [redacted] who was being pressured by [redacted] of Postal Service to approve the Spinner filters. [redacted] relayed that eventually Mack approved the filters and incurred the $300 per filter cost. [redacted] stated that during the 1999 purchase the Postal Service specified Spinner filters again but this time he adamantly refused to allow them for this particular purchase. [redacted] stated that Mack Trucks would not warranty the trucks unless the Spinner filters met Mack Truck specifications. [redacted] informed that eventually the Spinner manufacturer provided documentation that showed a filter met Mack Truck specifications. (Exhibit 3- Activity Report/Interview)

On January 19, 2000, [redacted] of Postal Service Vehicle Maintenance, Headquarters, was interviewed. [redacted] stated that he was on the source selection team for the Mack Truck purchase. With respect to the filters, [redacted] relayed that because of environmental concerns the Postal Service did not want disposable oil filters for the new vehicles. [redacted] stated that the decision to specify the Spinner filters was based solely on business. According to [redacted], the Postal Service had a 10 year business relationship with Spinner, and that their filters were comparable in performance and price to like brands. (Exhibit 4- Activity Report/Interview)



RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

On February 10, 2001, Special Agent [redacted] served an IG Subpoena upon Mack Trucks Inc. via their Senior Staff Attorney [redacted]

On September 19, 2000, Special Agent [redacted] and Special Agent [redacted] interviewed [redacted] and [redacted] of Pure Power in Huntington Beach CA. [redacted] informed that he was the owner of STD which manufactures oil, filters, and other lubricants exclusively for Pure Power. [redacted] stated that he was contacted by [redacted] of Postal Service Supplier Relations and invited to a competitive test of his filter at a Vehicle Maintenance Facility (VMF) in Houston TX . [redacted] stated that he was shown a letter authorizing the test and that [redacted] told him that the filter that performed better would be selected for the Mack Truck purchase. [redacted] informed that he received a letter from Mack Trucks informing him that his filter outperformed the Spinner filter. [redacted] added that at that time he made a commitment to purchase $100,000 of raw materials to produce filters solely upon the notification of the tests. (Exhibit 5- Activity Report/Interview) During the same interview [redacted] told Special Agent [redacted] that she was very upset regarding the solicitation and felt that an injustice had occurred. [redacted] stated they had never been promised a contract by anyone but she couldn't understand how the Postal Service could use a filter that failed to perform as well as theirs did. [redacted] went on to state that she had not been promised a contract or sub-contract with Mack Trucks but believed that once her filter prevailed in a test, she would automatically get the award. (Exhibit 6- Activity Report/Interview)

On September 25, 2000, Postal Service Supplier Relations Specialist for HQ Vehicle Maintenance, [redacted] was interviewed. [redacted] stated that the Postal Service was interested in testing two brands of filters, Pure Power and Spinner. [redacted] stated that the test occurred in Houston and lasted for 6 months. According to Harris, Mack Trucks paid for the oil analysis and the Postal Service contracted an independent laboratory to conduct the metal analysis. As a note, [redacted] informed the reporting agent that his office, HQ Vehicle Maintenance paid for the test out of their budget. [redacted] stated that he passed on the test results to his supervisor [redacted] and never heard anything else about it. (Exhibit 7- Activity Report/Interview)

On September 28, 2000, Special Agent [redacted] and Special Agent [redacted] interviewed the Program Manager for Vehicles and Carrier Equipment, [redacted] stated that he, [redacted] and [redacted] were on the source selection team for the 1998 contract award to Mack Trucks. [redacted] stated that the specifications for the solicitation were written well in advance of the procurement and didn't realize any substantial changes from the 1996 purchase. Regarding the filters, [redacted] stated that the decision to use Spinner was solely business. According to [redacted] the Spinner was comparable in performance and price and could be retrofitted to accommodate the existing fleet. [redacted] also stated that he was unaware of the filter test that was conducted



RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

in Houston and did not have the results prior to the contract award. [redacted]elayed that [redacted] of Vehicle Maintenance unilaterally conducted the test and neither Postal Service Engineering or Postal Service Purchasing knew of the test. Dinh stated that even if he had the results of the test, he wouldn't have considered them because as far as he was concerned the tests were invalid. [redacted]stated that [redacted] was the person who was pushing for the use of the Spinner filters. (Exhibit 8- Activity Report/Interview)

On November 8, 2000, a telephonic follow-up interview was conducted with [redacted] of Mack Trucks. [redacted] was interviewed to ascertain the details of the oil filter test that was conducted in Houston TX. [redacted] stated as he did in his initial interview that Mack Trucks was opposed to any type of washable, cleanable oil filter and would not warranty the engines because the filters were incompatible with the Mack design. [redacted] stated that he contacted [redacted] of Postal Service and stated that Mack had made a decision to test their standard paper filter against the Postal Service specified Spinner centrifuge and washable screen. [redacted] stated that when he arrived in Houston, [redacted] had brought [redacted] of Pure Power for the purposes of including his filter in the test. [redacted] made it clear that Mack was only conducting an oil analysis on their filter and the Postal Service filter specified in the solicitation. [redacted] added that neither he nor Mack Trucks had ever had a business relationship with Pure Power and the decision to include Pure Power was made solely by [redacted]. [redacted] stated that it was very obvious that [redacted] of HQ Vehicle Maintenance was pressuring Mack Truck officials to use the Spinner filters.(Exhibit 9- Activity Report/Interview)

On November 30, 2000, [redacted] was interviewed to ascertain his knowledge of the 1999 Mack Truck purchase. [redacted] stated that at the time of the procurement he was the Acting Manager, HQ Vehicle Maintenance. [redacted] stated that the Postal Service began doing business with the manufacturer of Spinner products, TF Hudgins in 1991. [redacted] stated that the Postal Service felt that washable filters were more economical and environmentally sound than paper filters and for that reason began specifying Spinner filters. [redacted] related that Mack proposed a choice of three filters to the Postal Service and because Spinner was comparable in performance and price and was compatible with the existing fleet, they chose Spinner. [redacted] stated that he has never accepted gratuities of anything of value on this procurement or any other procurement. (Exhibit 10- Activity Report/Interview)

(Agent's Note: [redacted] was administered a technical investigative aid pursuant to an unrelated matter and he was ruled non-deceptive by the examiner in the area of gratuities or misconduct related to procurement matters

On January 4, 2001, Special Agents [redacted] and [redacted] interviewed the President and Vice-President of TF Hudgins Inc. located in Houston TX. TF Hudgins is



RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

the North American distributor of Spinner products. [redacted] stated that he was the President and owner of the company and had worked there for 29 years. [redacted] stated that he has been with the company for 10 years and has been the Executive Vice-President for 6 years. [redacted] and [redacted] stated that they have been doing business with the Postal Service for ten years and have never encountered any illegal or unethical business practices by anyone in the Postal Service. Regarding the Spinner filters, [redacted] stated that Mack purchased the filters directly from the manufacturer and that TF Hudgins only provided the first 100 filters. (Exhibit 11- Activity Report/Interview)

## IV. LAW ENFORCEMENT AND OTHER RECORDS

N/A

## V. PROSECUTION CONSIDERATION

N/A

## VI. JUDICIAL/ADMINISTRATIVE ACTION

On July 21, 2000, Pure Power Inc. filed for damages and injunctive relief in United States District Court for the Central District of California. The defendants in the suit were the Postal Service, Glacier Metal Company, and TF Hudgins. On or about April 2001, the District Court dismissed the Postal Service from the suit.

## VII. SUBJECTS

N/A

## VIII. DISPOSITION OF EVIDENCE, CONTRABAND, AND PROPERTY

N/A

## IX. STATUS OF INVESTIGATION

Closed



RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

## X. EXHIBITS

1) Activity Report/Interview of [redacted] of Pure Power Inc., July 19, 1999.
2) Activity Report /Interview of [redacted] POSTAL SERVICE Vehicle Maintenance, Huntington Beach, July 19, 1999.
3) Activity Report /Interview of [redacted] Mack Trucks, and September 7, 1999.
4) Activity Report /Interview of [redacted], POSTAL SERVICE HQ Vehicle Maintenance, January 19, 2000.
5) Activity Report /Interview of [redacted] Pure Power Inc., September 19, 2000.
6) Activity Report /Interview of [redacted] Pure Power Inc., September 19, 2000.
7) Activity Report /Interview of [redacted] POSTAL SERVICE HQ Supplier Relations, September 25, 2000.
8) Activity Report /Interview of [redacted], Program Manager, POSTAL SERVICE Engineering, October 2, 2000.
9) Activity Report /Interview of [redacted] Mack Trucks, November 8, 2000.
10) Activity Report /Interview of [redacted] POSTAL SERVICE Vehicle Maintenance, December 6, 2000.
11) Activity Report /Interview of TF Hudgins Officers, [redacted] and [redacted], January 12, 2001.



RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

********************
*** TX REPORT ***
********************

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 4100 |
| CONNECTION TEL | 17148946344 |
| CONNECTION ID | |
| ST. TIME | 12/03 12:26 |
| USAGE T | 09'15 |
| PGS. | 11 |
| RESULT | OK |

# LAW OFFICES OF MICHAEL J. BULEY

20271 S.W. BIRCH ST., SUITE 100
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE: (949) 752-1161
FAX: (949) 251-0337

## FACSIMILE COVER SHEET

**DATE**: DECEMBER 3, 2001

**TO:** KELLY TIDWELL

**FAX #:** 714-894-6344

**FROM:** MICHAEL J. BULEY

**RE:** PURE POWER! V. U.S.P.S., et al.

**Number of pages including cover sheet**: 11

If you have any questions or problems regarding this transmission,

Call Kathy @ (949) 752-1161

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential or exempt from disclosure under applicable Federal or State law. If you

**EXHIBIT "B"**

**EXHIBIT "B"**

U.S. POSTAL SERVICE: RECEIVING REPORT (FOR CONSIGNEE)

1. ORDER NO.: 102590-97-F-0776
2. ORDER DATE: 01/13/97
3. REQUEST NO.: 97-02756

4. a. ISSUED BY:
U.S. Postal Service
Purchasing Room 4541
475 L'Enfant Plaza SW
Washington DC 20260-6230

b. ACO CODE: 102594

c. FOR INFORMATION CALL:
Sheila M. Daout
(202) 268-3935

5. CONTRACTOR:
a. Name and Address:
FLUID TECHNOLOGIES INC
1016 EAST AIRPORT RD
PO BOX 669
STILLWATER OK 74076-0669

c. Contact Name:
REBECCA COOPER
d. Telephone No.:
(405) 624-0400
e. TIN: 73-1339075
f. Parent TIN:
(NOTE: TIN=Taxpayer Identification No.)

b. Remittance Name and/or Address (if different from above):

6. DESTINATION/DELIVERY REQUIREMENTS:
a. Address:
MANAGER, VMF MAINTENANCE

2801 WASHINGTON AVE
HOUSTON TX 77077-6095
b. Start Date: 01/21/97
c. End Date: 07/21/97
d. Delivery Hours: 8:00 AM - 5:00 PM
e. FOB Origin: STILLWATER OK 74076

f. Contact:
A.B. HAWKES
g. Telephone No.:
(713) 861-7901
h. Delivery Instructions:

ATTENTION CONSIGNEE

IF THIS ORDER IS FOR EQUIPMENT OR SUPPLIES, PLEASE PROVIDE A COPY OF THIS DOCUMENT TO YOUR DESIGNATED MATERIEL ACCOUNTABILITY OFFICER AND/OR DIRECTOR OF SUPPORT SERVICES.

ITEMS & PRICES/GENERAL DESCRIPTION OF REQUIREMENT

| ITEM NO | SUPPLIES/SERVICES | QTY | UNIT | UNIT PRICE($) | EXT. PRICE($) |
|---|---|---|---|---|---|
| 01 | "ANALYZE IT" FLUID ANALYSIS TEST KIT (SEE ATTACHED SHEET FOR TEST ANALYSIS PROCEDURES) | 110 | EACH | 51.5000 | 5,665.00 |
| 02 | BASELINE SAMPLE (PROVIDED AT NO COST) | 1 | EACH | N/C | N/C |
| 03 | SHIPPING CHARGES (SHIPPED BY U.S. POSTAL SERVICE ONLY) | 1 | EACH | 360.5000 | 360.50 |

ORDER NO.: 102590-97-F-0776

ACCOUNTING, FISCAL AND RECEIVING DATA:

Expense Items

Sequence #: 0001 Budgetary Finance #: 663490 FAC: F/ACT:
Account #: 52152 Sequence # Amount: $6025.50

| ITEM NUMBER | QTY ORDERED | QTY RECEIVED | DATE RECEIVED | REJECTED/REASONS |
|---|---|---|---|---|
| 01 | 110 | | | |
| 02 | 1 | | | |
| 03 | 1 | | | |

7. ( ) PARTIAL SHIPMENT ( ) FINAL SHIPMENT
SIGNATURE OF AUTHORIZED PERSON RECEIVING/INSPECTING DELIVERY

Signature Date

Typed or Printed Name Title

Enter the quantity received and the date for each item. Indicate the reasons for rejection, if any. Return the original to the Postal Data Center and send a copy to the issuing office. NOTE: If this order was for equipment or supplies, please send a copy of this document to your designated Materiel Accountability Officer and/or Director of Support Services.

8. BILLING INSTRUCTIONS (Submit Invoices To):
USPS - VEHICLE MAINTENANCE 475 LENFANT PLAZA SW
ATTN: RICHARD HARRIS, RM 7142 WASHINGTON DC 20260-2817

# EXHIBIT "C"

EXHIBIT "C"

## ATTACHMENT TO PART 1 - SCHEDULE

ITEM NO. 01:

Within four (4) days after receipt of the Postal Service furnished oil sample(s), the contractor shall:

1. Superclean 125ml sample container. Each sample container is identified by a serial number and shipped in a remailable packing container.

2. Particle Resuspension Method for engine oil samples if required.

3. Automatic particle counting per ISO 4406, ISO Cleanliness Code which designates ISO level at 2, 5, and 15 microns. A trend analysis of the previous 5 samples will also be included.

4. Free Water Presence Assessment.

5. Photomicrograph of contaminant.

6. Mail the Fluid Analysis Report to the following individuals:

Richard Harris
USPS Headquarters
475 L'Enfant Plaza, SW, Rm 7142
Washington, DC 20260-2817

Greg Shank
Mack Trucks, Inc.
13302 Pennsylvania Avenue
Hagerstown, MD 21742-2693

ITEM NO. 02:

The baseline test kit will include a baseline for wear metals and additives.

# EXHIBIT "D"

EXHIBIT "D"

U.S. Postal Service

# REQUISITION FOR SUPPLIES, SERVICES, OR EQUIPMENT

See Instructions on Reverse

| 1. Requisition No. | 2. Request Date | 3. Required Delivery Date | Page No. |
|---|---|---|---|
| | 01/07/97 | ASAP | 1 |

4. Job Order Number (Maintenance Use Only)

| WC | Acronym | EC | Work Order No. | No. of Pages |
|---|---|---|---|---|
| | | | | 1 |

5. To:
U.S. Postal Service
Purchasing Room 4541
Washington, DC 20260-6230

6. From: (Facility Name, Address, and Zip + 4)
Vehicle Maintenance
475 L'Enfant Plaza, SW Room 7142
Washington, DC 20260-2817

7. Complete Delivery Address
Vehicle Maintenance
475 L'Enfant Plaza, SW Rm. 7142
Washington, DC 20260-2817

a. Name: Richard Harris
b. PEN Telephone No.: (202) 268-3576

| 9. Budget Finance No. | 10. Prop. Acct. Fin. No. | 11. Acct. No. | 12. FEDSTRIP Address Code | 13. CAG | 14. PCN | 15. Requestor | 16. ID No. |
|---|---|---|---|---|---|---|---|
| 66-3490 | | 51152 | | | | VMF<br>XX Other | |

17. Description

| PS Item No. NSN, or Part No. | Supplies, Services, or Equipment Requested (b) | Quantity (c) | Unit (d) | Unit Price (e) | Estimated Cost (f) |
|---|---|---|---|---|---|
| | Establish an engine oil (Particle Count Analysis) at the Houston, TX , Vehicle Maintenance Facility. This test will be a means of identifying the best filters and filtration system for the new Mack Tractors vehicles.<br><br>Eighteen (18) tractors will be sampled each 30 days. Reports and invoices issued by the contractor will be sent to Richard A. Harris USPS Vehicle Maintenance, Room 7142 475 L'Enfant Plaza, SW Washington, DC 20260-2817<br><br>This will be a 6 month sample program. | 117 | each | $51.50 | $6,025.50 |

18. Justification
Fluid Technologies, is the only known Laboratory able to perform the Particle Count Analysis per FTI-D-C1 and ISO-4404.

19. Suggested Source of Supply- Address,Phone #, Salesperson Name
Fluid Technologies, Inc.
1016 East Airport Road P.O. Box 669
Stillwater, OK 74076
Att: Rebecca Cooper OR ROD WEBB
(405) 624-0400

20. Requesting and Approval Signature

a. Requested By
Richard A. Harris [signature] 1/7/97
Veh. Maintenance Method Spec.

b. Approved By
Wayne Corey , Acting Manager
Vehicle Maintenance [signature]

c. Certifying Funds Available
$6,025.50 | Signature [signature] 1/7/97 | Budget Coordinator

d. Sectional Center Approval

e. Division Approval

f. Other Approval
97-2756

21. Source of Supply

22. Contract /Order No.
102590-97-F-0776 SMD 1-13-97

23. Notes

23. Processed By (Title and Signature)

24. Order Date

PS Form 7381, August 1986

# EXHIBIT "E"

EXHIBIT "E"

ENGINEERING
DELIVERY & CUSTOMER SERVICES EQUIPMENT

UNITED STATES POSTAL SERVICE

April 29, 1999

Ms. Fran Cyrus
PurePower ! Inc.
15751 Chemical Lane
Huntington Beach, CA 92649

Dear Ms. Cyrus:

Thank you for writing to Mr. William J. Dowling, Vice President of Engineering, concerning the application of your PurePower oil filter for the USPS Mack Trucks.

In the most recent buy of Mack Trucks, Mack provided the USPS with two options for filters that met their vehicle specifications. The options were PurePower 22-micron and the Spinner 25-micron filters. The Spinner 25-micron filter is an upgrade from Spinner 60-micron filter that was used in the test at the Houston, TX Vehicle Maintenance Facility.

The USPS selected the Spinner 25-micron filter based on the information presented by Mack. The information indicated the Spinner and Pure Power filters were virtually equal in price and performance. Also, the filtering system for the Spinner 25-micron is backward compatible with the Spinner 60-micron filters installed on our earlier buy of Mack Trucks.

If you have any further questions, please call me at (703) 280-7050 or Han Dinh at (703) 280-7138.

Sincerely,

James W. Buie
Manager

cc: William J. Dowling, Vice President, Engineering
A. Keith Strange, Vice President, Purchasing and Materials
David F. Page, Manager, Operation Equipment Purchasing

8403 Lee Highway
Merrifield, VA 22082-8101
703-280-7050
Fax: (703) 280-8402

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on this 17th day of November 2005, I caused to be sent VIA United States mail (first class, postage prepaid) copies of "DECLARATION OF MICHAEL J. BULEY OFFERED IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S FRCP RULE 12(b)(1) MOTION TO DISMISS" addressed as follows:

David B. Stinson
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L. Street
Washington, DC 20530

s/ Michael J. Buley