# In the United States Court of Federal Claims

No. 05-559C
(Filed February 10, 2006)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * | * |
| | * |
| **PURE POWER!, INC.,** | * Contracts; Tucker Act, 28 U.S.C. |
| | * § 1491(a)(1) (2000); Administrative |
| Plaintiff, | * Disputes Resolution Act of 1996, 28 |
| | * U.S.C. § 1491(b)(1) (2000); motion to |
| v. | * dismiss; jurisdiction to hear contract |
| | * claims versus well-pleaded contract; |
| **THE UNITED STATES,** | * authority of government representative to |
| | * bind Government; standing; interested |
| Defendant. | * party. |
| | * |
| * * * * * * * * * * * * * * * * * * * | * |

_____ Michael J. Buley_, Newport Beach, CA, for plaintiff.

_David B. Stinson_, Washington, DC, with whom was _Assistant Attorney General Peter D. Keisler_, for defendant.  _Christopher J. Burton_, United States Postal Service, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

This case is before the court on defendant's motion to dismiss.  Argument is deemed unnecessary.  The issues for decision are (1) whether the United States Court of Federal Claims lacks subject matter jurisdiction under 28 U.S.C. § 1491(a)(1) (2000), where plaintiff fails to plead the existence of an express or implied-in-fact contract; and (2) whether plaintiff has standing as an "interested party" under 28 U.S.C. § 1491(b)(1) (2000), where a prospective subcontractor does not challenge or base its rights on an actual solicitation.  Although this court possesses the subject matter jurisdiction to hear claims of the nature alleged by plaintiff, plaintiff has not successfully  pleaded the elements of an express or implied-in-fact contract.  Plaintiff also has failed to establish that it has the requisite standing to proceed to a ruling on the merits.

## FACTS

Pure Power!, Inc. ("plaintiff"), is a California corporation engaged in the manufacture of reusable oil filters, lubricants, and related products.  Plaintiff alleges that in 1996 the United States Postal Service (the "USPS") requested that it participate in a costly two-year testing program in which plaintiff's reusable oil filtering system would be tested against a competing reusable oil filtering system manufactured by Glacier Metal Company Limited ("Glacier").  Mack Trucks, Inc. ("Mack Trucks" or "Mack"), the supplier of the trucks for the USPS, conducted the testing, which was completed in November 1998.  Plaintiff relies on an understanding among all concerned that the company with superior performance on the tests was to become the oil filter provider for the line of trucks under order by the USPS, as well as previously purchased trucks.

The following month, Mack Trucks contacted plaintiff to inform it of the test results. A December 1, 1998 letter from Greg Shank, a Mack Trucks employee, reads:  "Clearly the Data confirm[] the Pure Power Filters were much more efficient in removing the 10 micron and smaller particles, which cause engine wear."

In January 1999 plaintiff was informed that it would not be awarded a contract to supply oil filters.  Rather, Glacier had been selected to provide and, where appropriate, replace the filters on the USPS trucks.  The USPS defended this decision in an April 29, 1999 letter from James W. Bute, Manager.  Mr. Bute explained that "[t]he USPS selected the [Glacier] filter based on the information presented by Mack."  While the "information indicated [Glacier] and Pure Power filters were virtually equal in price and performance," Mr. Bute wrote, the Glacier filter had the advantage of being backward compatible with the USPS's previously purchased Mack Trucks.

In a letter to the USPS dated January 26, 1999, Fran Cyrus, President of Pure Power!, Inc., asserted that the decision was a result of USPS misconduct as evidenced by the "numerous meetings" the USPS held with Mack Trucks as well as "numerous meetings and conversations with . . . Glacier . . . representatives in an attempt to find a way to skirt the recommendation of Mack Trucks."  However, the USPS denied these allegations, notifying plaintiff that the USPS took the position that no postal employee had committed any wrongdoing and that it considered the issue closed.  A. Keith Strange & William J. Dowling, June 23, 1999, at 1 ("Strange & Dowling Letter").

## PROCEDURAL HISTORY

On July 21, 2000, plaintiff filed a complaint in the United States District Court for the Central District of California.  The initial complaint sought relief for civil conspiracy, fraud,

and violations of various sections of the California Business & Professions Code, "arising out of the suspicious nature of the contract designation." Pl.'s Br. filed Nov. 17, 2005, at 1. In response to a motion to dismiss, the district court concluded that it lacked jurisdiction to review a procurement decision of the USPS and dismissed plaintiff's claim. Plaintiff appealed the decision, and, following remand, see Pure Power, Inc. v. United States, 83 Fed. Appx. 901 (9th Cir. 2003) (unpubl. table),  the parties stipulated to transfer the case to the Court of Federal Claims.

Plaintiff subsequently filed an amended complaint on June 14, 2005.  Its third and final incarnation alleges (1) that the USPS violated its own policies and procedures, as set out in the USPS Procurement Manual and (2) that the USPS broke obligations stemming from a contract between plaintiff and unnamed USPS personnel that, if plaintiff was successful in a field test, it would be designated as sole source for retrofits of oil filters on USPS Mack trucks.

On September 28, 2005, defendant filed a motion to dismiss, to which plaintiff responded on November 17, 2005.  Defendant's reply brief, filed on December 19, 2005, was accompanied by two new declarations.  In a January 3, 2006 order, this court permitted plaintiff to file a sur-reply by January 17, 2006, to address the new material set forth in the declarations.  However, plaintiff did not avail itself of this opportunity.

## DISCUSSION

I. <u>Motion to dismiss based on lack of subject matter jurisdiction</u>

Jurisdiction must be established before the court may proceed to the merits of a case. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88-89 (1998).  The party seeking to invoke subject matter jurisdiction bears the burden of establishing it.  McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002).  Federal courts are presumed to lack jurisdiction unless the record affirmatively indicates the opposite.  Renne v. Geary, 501 U.S. 312, 316 (1991).

The Tucker Act defines the jurisdictional reach of the Court of Federal Claims.  See 28 U.S.C. § 1491(a)(1) (2000).  It "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States, and . . . waives the Government's sovereign immunity for those actions."  Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005); see also Emery Worldwide Airlines, Inc. v. United States, 49 Fed. Cl. 211, 220 (2001) (finding USPS a "federal agency" within meaning of Administrative

Disputes Resolution Act (the "ADRA"), and, thus, jurisdiction over it exists under Tucker Act), <u>aff'd</u>, 264 F.3d 1071, 1080 (Fed. Cir. 2001).

Most relevant to the present case, the Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1); <u>see also</u> <u>Trauma Serv. Group v. United States</u>, 104 F.3d 1321, 1324-25 (Fed. Cir. 1997) ("Jurisdiction based on contract 'extends only to contracts either express or implied in fact, and not to claims on contracts implied in law.'" (quoting <u>Hercules, Inc. v. United States</u>, 516 U.S. 417, 423 (1996))).

In <u>Fisher v. United States</u>, 402 F.3d 1167 (Fed. Cir. 2005), the United States Court of Appeals for the Federal Circuit sought to clarify Tucker Act jurisprudence, which had blended the questions of the Court of Federal Claims's jurisdictional grant with the merits of the claim. "This mixture has been a source of confusion for litigants and a struggle for courts." <u>Id.</u> at 1172. As the Federal Circuit elucidated, the Tucker Act does not provide any substantive causes of action. "[I]in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." <u>Id.</u>; <u>see also</u> <u>United States v. Mitchell</u>, 463 U.S. 206, 216 (1983).

The Federal Circuit adopted a single-step approach to addressing whether a Constitutional provision, statute, or regulation is money-mandating and, therefore, within the jurisdiction of the Court of Federal Claims.

When a complaint is filed alleging a Tucker Act claim based on a Constitutional provision, statute, or regulation, . . . the trial court at the outset shall determine, either in response to a motion by the Government or *sua sponte*[,] . . . whether the Constitutional provision, statute, or regulation is one that is money-mandating.

If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course. . . .

If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a

> money-mandating source being fatal to the court's jurisdiction under the
> Tucker Act.

Fisher, 402 F.3d at 1173. Thus, a claim is not beyond the subject matter jurisdiction of the Court of Federal Claims merely because the Government asserts that it never had a contract with the plaintiff. Rather, if the existence of a contract is well-pleaded, the court has the jurisdiction to determine, on the merits, if a valid contract actually exists. The difference, while subtle, is substantial. Although the Court of Federal Claims has subject matter jurisdiction over claims of the nature alleged by plaintiff, plaintiff must plead the requisites of a contract.

"The elements for creating a binding contract with the United States are identical for both express and implied contracts." Trauma Serv. Group, 104 F.3d at 1325. In either instance "[t]he party alleging a contract must show a mutual intent to contract[,] including an offer, an acceptance, and consideration." Id.; City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir.1990).

However, "[g]overnment requests for information and responses from prospective bidders are not the equivalents of offer and acceptance." Motorola, Inc. v. United States, 988 F.2d 113, 116 (Fed. Cir. 1993). Even where prospective bidders expend "considerable time, money and effort" to respond to the Government's requests for information "during the development phase of . . . procurement specifications," id. at 115, they do not do so with "an expectation to presently affect legal relations[,]" id. at 116. Instead, "the parties are dealing—as they were here—exclusively with an eye to the future, each being free, in the meantime, to withdraw from the dialogue." Id. Because any alleged communications between plaintiff and the USPS were limited to pre-procurement information gathering, no offer and no acceptance can be inferred.

In addition to the above elements, the formation of a valid contract with the United States requires that the government representative who entered or ratified the agreement have the actual authority to bind the United States. Trauma Serv. Group, 104 F.3d at 1325; see also Heckler v. Cmty. Health Serv. of Crawford County, 467 U.S. 51, 63 (1984). Indeed, the Government only can be bound by its authorized agents. Flexlab, LLC v. United States, 424 F.3d 1254, 1263 (Fed. Cir. 2005) ("Surely the assurances from a government agent, having no authority to give them, cannot expose the government to risk of suit for the nonperformance of an obligation that it did not intentionally accept."). "Anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." Fed. Crop Ins.

Corp. v. Merrill, 332 U.S. 380, 384 (1947); see also Trauma Serv. Group, 104 F.3d at 1325 (A party to an agreement with the Government accepts "the risk of accurately ascertaining the authority of the agents who purport to act for the Government, and this risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations on their authority.").

Plaintiff contends that "USPS employee Richard Harris represented to Pure Power that if Pure Power took part in the USPS filter tests, and won, it would be [designated] the specified filter in the Mack Truck/USPS contract." Pl.'s Br. filed Nov. 17, 2005, at 9. However, Mr. Harris, as Vehicle Maintenance Method Specialist, did not have the actual authority to bind the United States. Defendant establishes this fact through the unchallenged declarations of David F. Page, Manager of the Mail Transportation and Spares Category Management Center, and Paul D. McGinn, Supply Management Policies Specialist.

The court "may consider relevant evidence in order to resolve [a] factual dispute" where a motion to dismiss "challenges the truth of the jurisdictional facts alleged in the complaint." Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988) (citing Land v. Dollar, 330 U.S. 731, 735 (1947)). When resolving a jurisdictional challenge, the court may look to evidentiary matters outside the pleadings. Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985); see also Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1584 (Fed. Cir. 1993). It is permissible, then, for this court to consider the declarations presented by defendant.

Where "a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof." Thomson v. Gaskill, 315 U.S. 442, 446 (1942); see also Hishon v. King & Spalding, 467 U.S. 69, 73 n.2 (1984); Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002). As plaintiff has not addressed defendant's declarations, they remain undisputed. Plaintiff's failure to put forth any evidence that it entered into an agreement with anyone who possessed actual authority is fatal. See Sartori v. United States, 58 Fed. Cl. 358, 362 (2003) (citing Trauma Serv. Group, 104 F.3d at 1327; City of El Centro, 922 F.2d at 820.).

Indeed, plaintiff's silence with respect to the court's January 3, 2006 order bespeaks volumes. The record does not indicate that anyone at the USPS had the power to bind the United States to a contract by and between plaintiff and Mack Trucks. See Strange & Dowling Letter, at 1 ("Your [plaintiff's] letter clearly states your belief that Pure Power has been wronged in not having been selected by Mack

Trucks as a supplier of oil filters for tractors delivered to the Postal Service under a recent contract." (emphasis added)). Even as a possible supplier or subcontractor to Mack Trucks, plaintiff lacks contractual privity with the United States and cannot establish standing. See United States v. Johnson Controls, 713 F.2d 1541, 1550 (Fed. Cir. 1983) ("[T]he no-privity rule is synonymous with a finding that there is no express or implied contract between the government and a subcontractor."); see also First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1289 (Fed Cir. 1999) ("As a general proposition, the 'government consents to be sued only by those with whom it has privity of contract.'" (quoting Erickson Air Crane Co. of Wash. v. United States, 731 F.2d 810, 813 (Fed. Cir.1984)).

II.  Motion to dismiss based on lack of standing

"Standing to sue is a threshold requirement in every federal action." Sicom Sys., Ltd. v. Agilent Tech., 427 F.3d 971, 975 (Fed. Cir. 2005); see also Myers Investigative & Sec. Serv., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002). The burden of proving that standing was present at the time the suit was brought lies with the party invoking federal jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); Myers Investigative & Sec. Serv., 275 F.3d at 1369. General factual allegations may satisfy this burden at the pleading stage, "for on a motion to dismiss the court presumes that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990).

The ADRA gives the Court of Federal Claims jurisdiction to entertain actions by "interested part[ies] objecting to a solicitation by a Federal Agency for bids of proposals for a proposed contract or to a proposed award or the award of a contract." 28 U.S.C. § 1491(b)(1). While the ADRA does not define the term "interested party," the Federal Circuit has determined that Congress intended to adopt the definition provided in the Competition in Contracting Act (the "CICA"), 31 U.S.C. §§ 3551-3556 (2000). See Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001).

Per the CICA "[t]he term 'interested party,' with respect to a contract or a solicitation or other request for offers described in paragraph (1), means an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2)(A) (2000); Myers Investigative & Sec. Serv., 275 F.3d at 1370 ("In bid protests under the Tucker Act, 'we . . . construe the term "interested party" in section 1491(b)(1) in accordance with the [standing requirements of the] CICA and hold that standing under

§ 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract.'" (alterations in original) (quoting Am. Fed'n of Gov't Employees, 258 F.3d at 1302 (internal quotations omitted))); see also Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003) ("In order to establish standing, [plaintiff] must show that it is an 'actual or prospective bidder[] or offeror[] whose direct economic interest would be affected by the award of the contract or by failure to award the contract,' i.e., that [plaintiff] was an interested party, prejudiced by the award . . . ." (second and third alteration in original) (quoting Am. Fed'n of Gov't Employees, 258 F.3d at 1302)).

Unfortunately for plaintiff, subcontractors are not considered actual or prospective bidders under the CICA. See MCI Tele. Corp. v. United States, 878 F.2d 362, 365 (Fed. Cir. 1989) (determining that almost identical definition of "interested party" under now repealed Brooks Act, 40 U.S.C. § 759(f)(9)(B) (1994) could not include subcontractor who did not submit its own proposal); see also Info. Sys. & Networks Corp. v. United States Dept of HHS, 970 F. Supp. 1, 8 (D.D.C. 1997) (holding that subcontractor is not interested party unless it is "at least an 'offeror'"); Eagle Design & Mgmt., Inc. v. United States, 62 Fed. Cl. 106, 108 (2004) (asserting that "[o]ur appellate authority has squarely rejected the notion that a subcontractor qualifies as an 'interested party' under the CICA definition . . . . "). Because plaintiff is "properly characterized as, at best, a prospective supplier or subcontractor to Mack Trucks," Def.'s Br. filed Sept. 28, 2005, at 22, rather than an actual or prospective bidder on a government solicitation, plaintiff cannot qualify as an interested party with standing.

It would be impermissibly speculative to posit how plaintiff might qualify as an offeror when it has not even alleged an on-going competitive procurement process. Plaintiff's complaint establishes that, at the time it became involved in the testing program, the USPS had already awarded the contract—a contract for vehicles, not filters— to Mack Trucks. The proposal period had ended and, with it, any theoretical possibility of becoming an actual or prospective bidder. MCI Tele. Corp., 878 F.2d at 365 (holding that "the opportunity to qualify either as an actual or a prospective bidder ends when the proposal period ends . . . .").

As plaintiff cannot establish that it was an "interested party" as required under 28 U.S.C. § 1491(b)(1), it does not have standing to bring this bid protest. "[S]tanding is jurisdictional, [and] lack of standing precludes a ruling on the merits." Media Techs. Licensing, LLC v. Upper Deck Co., 334 F.3d 1366, 1369-70 (Fed. Cir. 2003).

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss is granted, and the Clerk of the Court shall dismiss the complaint without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED**.

No costs.

s/ Christine O. C. Miller

_____

**Christine Odell Cook Miller**
Judge